Commonwealth of Pennsylvania, Department of Public Welfare, Appellant *v.* Joseph Kallinger, Appellee.

Argued March 3, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Prince Altee Thomas,* Deputy Attorney General, for appellant.

*Robert L. Knupp,* Assistant Solicitor, for petitioner below, County of Dauphin.

*Shelly D. Yanoff,* Assistant City Solicitor, with him *Pauline C. Cohen,* Chief Assistant City Solicitor, and *Alan J. Davis,* City Solicitor, for appellee, County of Philadelphia.

OPINION BY JUDGE CRAIG, April 19, 1982:

The Commonwealth of Pennsylvania (Commonwealth) appeals two orders of the Court of Common Pleas of Dauphin County. The first order held the

Commonwealth responsible for the cost of mental health treatment for Joseph Kallinger, a state correctional institution prisoner, from January 26, 1979. The second order denied the Commonwealth's preliminary objections because they were untimely filed.

In 1975, in Dauphin County, Kallinger was convicted of a series of crimes committed in Dauphin County and sentenced to combined prison terms of not less than thirty years nor more than eighty years. After this trial, Kallinger was transferred to New Jersey where he was tried and convicted of crimes committed in that state. In March, 1978, Kallinger was returned to Pennsylvania and incarcerated at the State Correctional Institution at Huntingdon (Huntingdon).

In May, 1978, the superintendent at Huntingdon initiated a petition for Kallinger's involuntary treatment under the Mental Health Procedures Act of 1976[1] (Procedures Act), Section 304.[2] The Huntingdon County Court of Common Pleas committed Kallinger to Farview State Hospital (Farview) with costs of his treatment to be paid by Dauphin County.

The parties agree that Dauphin County was responsible for the cost of Kallinger's care in Farview from his entry there until January 26, 1979.[3] On that date, Section 408 of the Procedures Act[4] became effective, providing, in pertinent part, that

---

[1] Act of July 9, 1976, P.L. 817, No. 143, *as amended*, 50 P.S. §§7101-7503.

[2] 50 P.S. §7304.

[3] Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966 (3rd Sp. Sess., P.L. 96, No. 6), *as amended*, 50 P.S. §§4100-4704. Section 505(a)4 of that Act Provides in pertinent part:
Whenever any person is cared for in a facility while under conviction or sentence, liability for all costs, payments or expenditures made on behalf of such person is hereby imposed upon the county where he was convicted or sentenced. (50 P.S. §4505(a)).

[4] 50 P.S. §7408.

The Commonwealth shall pay for the costs . . . in excess of $120 per day made on behalf of any person who is a resident of a county located within the Commonwealth and who receives treatment and for whom liability is imposed on the county pursuant to section 505(a) of the . . . Mental Health and Mental Retardation Act of 1966. All costs up to and including $120 per day shall be imposed upon the county of his residence. In the event that a residency cannot be determined to be in a county within the Commonwealth by the court that convicted or sentenced the person, all liability for treatment imposed by Section 505(a) of the Mental Health and Mental Retardation Act of 1966 shall be borne by the Commonwealth.

On October 3, 1980, Dauphin County filed a petition, in the Dauphin County Common Pleas Court, requesting a hearing to determine whether Dauphin County, some other county or the Commonwealth is liable for the costs of Kallinger's treatment under Section 408. On October 14, 1980, the Court ordered that Dauphin County's petition be served upon the Superintendent of Farview, the Commonwealth's Acting Secretary of Revenue, the President Judge of Huntingdon County and the Solicitor of the City of Philadelphia. No service was ordered or made upon the Commonwealth's Attorney General.

At the hearing, held on October 28, 1980, Dauphin County and the City of Philadelphia were represented. No appearance was made for the Commonwealth.

The Attorney General alleges that he received notice of Dauphin County's petition, from the Department of Public Welfare, on November 25, 1980, and that his office immediately contacted the Dauphin County Court by telephone and requested permission to intervene before that court's order was filed. The

court instructed the Attorney General to file his objections before December 1, 1980. The Attorney General's objections were mailed from Philadelphia on December 1, and docketed on December 4, 1980.

The court allocated the costs of Kallinger's treatment to the Commonwealth by order of December 2, 1980, and denied the Attorney General's preliminary objections by order of December 9, 1979.

We must first decide if a petition to determine liability for mental health treatment costs under Section 408 is an action against the Commonwealth requiring service upon the Attorney General.

> Pa. R.C.P. No. 2104(b) provides in pertinent part: When an action is commenced against an officer of the Commonwealth, or against a department, board, commission or instrumentality of the Commonwealth, or a member thereof, . . . service shall be made at the office of the defendant *and at the office of the attorney general.*

Dauphin County's petition is an "action" within the meaning of Pa. R.C.P. No. 2101, which provides:

> Action means any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules.

When a sentencing court is asked to determine liability for treatment costs under Section 408, the Commonwealth is an interested party because, if, as here, no county of residence is found, the Commonwealth will be liable. We conclude that such petitions constitute actions against the Commonwealth for the purpose of requiring service upon the Attorney General under Pa. R.C.P. No. 2104(b).

In the memorandum opinion accompanying the order denying the Commonwealth's objections, the Court below touched upon the merits by stating that those objections "have no validity." We will, there-

fore, reach the issue of whether the court erred in deciding that Kallinger has no legal residence under Section 408.

The common pleas judge found that, at the time of his arrest, Kallinger was a resident of Philadelphia, but concluded that, for purposes of Section 408, Kallinger had no county of residence. The judge said:

> [K]allinger's residency in Philadelphia at the time of his arrest more than five years ago and more than two years before his commitment to Farview is insufficient to establish Philadelphia as the county of his residence ...

We disagree.

The Pennsylvania Department of Public Welfare has promulgated regulations which define "county of residence" as used in Section 408. In pertinent part, 55 Pa. Code 7100.101.3 provides:

> County of residence—the county wherein the person had a legal residence prior to being admitted or committed to an approved facility for treatment.

In pertinent part, 55 Pa. Code 7100.408(e) provides:

> For the purpose of determining liability the county wherein the person had a legal residence prior to being committed or admitted for treatment will be considered the county of residence
> . . .

The term legal residence has been held to mean domicile. *In re Lesker,* 377 Pa. 411, 105 A.2d 376 (1954). We decide that "legal residence" as used in Section 408 means domicile.

In *In Re Publicker's Estate,* 385 Pa. 403, 405-06, 123 A.2d 655, 658 (1956) the court said:

> The domicile of a person is the place where he has *voluntarily* fixed his habitation with a pres-

ent intention to make it either his permanent home or his home for an indefinite future.

. . . .

While ordinarily the fact of physical presence in a particular place is 'prima facie' evidence of domicile yet where physical presence is occasioned by necessity i.e. in a military camp, a hospital, a nursing home, etc., the rule is otherwise. (Emphasis added.)

A domicile, once acquired, is presumed to continue until it is shown to have been changed. Mere absence, however long continued, cannot work the change. Until a new domicile is acquired, the old one remains. *Mitchell v. United States,* 88 U.S. (21 Wall.) 350 (1875).

We decide that Kallinger's involuntary absence from his domicile, Philadelphia, does not result in a change or loss of legal residency under Section 408. For purposes of Section 408, when a prisoner is committed, legal residency means the person's domicile before incarceration.

Accordingly, we reverse the orders of the common pleas court and hold that, under Section 408, Philadelphia County as Kallinger's county of legal residence, is responsible for costs up to $120 per day after January 26, 1979.

### ORDER

Now, April 19, 1982, the order of the Court of Common Pleas of Dauphin County, docket No. 5470 S 1980, dated December 2, 1980, assigning the liability for Joseph Kallinger's mental health care, from January 26, 1979, to the Commonwealth of Pennsylvania, is hereby reversed, and the County of Philadelphia is ordered to pay Kallinger's treatment costs up to and including $120 per day.

This decision was reached prior to the resignation of Judge MENCER.