684 A.2d 189

**Phyllis NORMAN and Lawrence Norman, Administrators of the Estate of Troy Norman, Appellants,**

**v.**

**PENNSYLVANIA NATIONAL INSURANCE COMPANY, and Harleysville Insurance Company, Appellees. (Three Cases.)**

Superior Court of Pennsylvania.

Argued Sept. 10, 1996.

Filed Oct. 22, 1996.

Richard C. Levine, Pittsburgh, for appellants.

Robert E. Dapper, Jr., Pittsburgh, for Pa. Nat'l, appellee.

Troy J. Harper, Brookville, for Harleysville, appellee.

Before CIRILLO, President Judge Emeritus, and TAMILIA and HESTER, JJ.

CIRILLO, President Judge Emeritus:

Phyllis and Lawrence Norman (the Normans), administrators of the estate of their son, Troy Norman, appeal from an order entered in the Court of Common Pleas of Jefferson County granting Appellees Pennsylvania National Insurance Company's (Penn National) and Harleysville Insurance Company's (Harleysville) motions for summary judgment. We affirm.

On December 5, 1987, Troy Norman was a passenger in a car driven by Scott Clever. The vehicle was involved in an accident, leaving Norman with injuries that eventually resulted in his death in 1991. The Normans filed a lawsuit against Clever; a default judgment on liability was entered against

him. Subsequently, a non-jury trial on damages was conducted, and the trial court entered a verdict against Clever in the amount of $3,550,690.85.

The Normans filed a complaint against Penn National and Harleysville. Willard Butz, married to Clever's mother, was insured by Penn National at the time of the accident; Clever's grandfather, Clinton Runyan, was insured by Harleysville at the time of the accident. The insurance companies responded with a motion for summary judgment, claiming that Clever was not a resident of either his stepfather's or grandfather's home at the time of the accident. The trial court agreed, and granted both motions for summary judgment. This appeal followed.

The Normans raise two issues for our consideration:

(1) Did the trial court err in holding that the issue of the alleged insured's residency was not a question of fact for the jury, but a question of law, thereby granting the Defendants' motions for summary judgment?

(2) Assuming arguendo that the issue of the alleged insured's residency is a question of law, did the trial court err in finding that the alleged insured was not a resident under a policy issued by either Defendant, thereby granting the Defendants' motions for summary judgment?

When we review the grant of a motion for summary judgment, the appellate court's scope of review is well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). Summary judgment may be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa.

194, 264 A.2d 597 (1970). In considering a motion for summary judgment, the court accepts as true all well pleaded facts in the non-moving party's pleadings, as well as those in the admissions on file, giving them the benefit of all reasonable inferences to be drawn therefrom. *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1971). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

We look first to the insurance policies at issue. The Penn National policy held by Butz covers Butz and "family members" who operate his automobiles. "Family member" is defined in the insurance policy as "a person related to you by blood, marriage or adoption, who is a resident of your household." Likewise, Runyan's Harleysville policy covers Runyan and any "family member" for the ownership, maintenance, or use of an automobile. "Family member" under the Harleysville policy similarly includes "a person related to [Runyan] by blood, marriage or adoption who is a resident of [Runyan's] household."

Clever's residence and living arrangements, from the time of high school graduation in 1985 until the time of the accident, were established by way of deposition testimony. After graduation, Clever moved from the Butz's home to Erie, Pennsylvania, where he stayed for approximately one year. He subsequently lived with his brother for a few months in Brookville, Pennsylvania. He also lived in his girlfriend's home for a few months. Clever later moved in with his grandparents, the Runyans, in February or March of 1987. Clever relocated to DuBois, Pennsylvania, in August of 1987, where he found a job at McDonalds. While in DuBois, Clever lived with friends in an apartment. On November 1, 1987, Clever moved out of DuBois because he had enlisted in the Marines and was scheduled to report for duty on December 7, 1987. Clever decided to spend the month visiting friends and family before leaving for the Marines. During a deposition, Clever described his activities as follows: "Well, I was going

to jump around and visit everybody, you know, till I left. As far as when I come back from DuBois, I put my clothes and everything at my mom's, but I wasn't going to take up residency or anything." When asked how much time Clever spent at his mother's/stepfather's residence between November 1st and December 7th, he replied: "Probably at the most I would say a week and a half I was there. Other times I was like down staying at my grandparents and visiting my cousins and stuff." Clever admitted to staying at least five different places during the period between November 1st and the December 7th accident. Gloria Butz, Clever's mother, testified in her deposition that Clever had been staying with her for a few days before the accident. She also testified that, prior to the accident, if mail came to her home addressed to Clever, she would write "not at this address" on it and place it back in the mail box. Willard Butz also testified that Clever stayed at the Butz's home for three or four days prior to the accident.

Based on these facts, the trial court determined that Clever was not a "resident" of the Butz or Runyan household and, therefore, was not covered by the Penn National policy or the Harleysville policy. A controlling case on the subject of residency, cited by the trial court and parties, is *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.,* 376 Pa.Super. 109, 545 A.2d 343 (1988). In *Amica,* Elizabeth Hagerty caused an accident that injured herself and two passengers; she was driving her father's (Dr. Robert Hagerty's) car at the time. Donegal Mutual Insurance Company, Dr. Hagerty's insurer, refused to provide liability coverage for Elizabeth. Amica Mutual, Dr. Hagerty's ex-wife's insurer, filed a declaratory judgment action against Donegal seeking to have it declared liable for coverage of the accident. The trial court concluded that Elizabeth was not a resident of her father's household at the time of the accident and, therefore, Donegal had no duty to provide coverage.[1]

1. Like the instant case, Dr. Hagerty's policy provided that a "covered person" included a "family member," meaning "a person related by

Elizabeth lived with her mother from 1972 to 1982. During the year 1982, she lived with her father. Elizabeth moved back with her mother for the 1983–84 school year, her senior year in high school. The trial court found that Elizabeth made sporadic visits to her father's house during her senior year. During that time, she had a closet or two full of clothes at her father's house, approximately forty pairs of shoes, other belongings, and a pet rabbit. She also received mail at that address. Elizabeth had planned on living with her father following graduation until she left for college. The accident occurred on June 1, 1984.

The *Amica* court began its analysis by stating, "[i]n determining the meaning of the word 'residence,' both its object and context must be kept in view." *Amica,* 376 Pa.Super. at 114, 545 A.2d at 346. The court found that the objective of the policy was to limit coverage to those family members who actually live in the same household as the insured. *Id.* We declared:

> The Courts of this Commonwealth have historically recognized the classic definitions of the words domicile and residence. Domicile being that place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. Residence being a factual place of abode. Living in a particular place, requiring only physical presence. Though the two words may be used in the same context, the word resident as used in the policy, without additional words of refinement, i.e., permanent, legal, etc., would carry the more transitory meaning.

*Id.* (quoting *Krager v. Foremost Insurance Co.,* 304 Pa.Super. 390, 393–94, 450 A.2d 736, 738 (1982)). In light of the foregoing, the *Amica* court concluded:

> Instantly, we find the common law definition of "resident" applicable to the policy language in question. The policy provides coverage for family members of the insured who are residents of his household. This language contains no

blood, marriage or adoption who is a resident of your household." *Amica,* 376 Pa.Super. at 112 n. 1, 545 A.2d at 344 n. 1.

words of refinement, such as "legal" or "permanent" which might suggest a less transitory meaning. Rather, we construe the language to limit coverage to those who actually reside in the household of the insured.

*Amica*, 376 Pa.Super. at 115–16, 545 A.2d at 346. This court further found that Elizabeth kept personal items at her father's house for convenience, and that such items did not evidence that she physically lived there. *Id.* Finally, this court reasoned that since resident status is a question of physical fact, a child's intention to live at one parent's home is not a relevant consideration. *Id.* at 118–20, 545 A.2d at 348.

In the instant case, while we acknowledge that the term "resident" has a more transitory meaning when it contains no qualifying terms of refinement, we nevertheless find that the trial court was correct in concluding that Clever was not a "resident" at the Butz's or the Runyan's at the time of the accident. Clever cannot be said to have actually resided in the household of either insured. *Amica, supra.* The undisputed facts reveal that, since Clever moved from the Butz home one year after graduation, his visits with his mother and stepfather have been sporadic at best. Clever's mother admitted that she would return any mail that was delivered to Clever at her address. During the month preceding the accident, Clever resided with the Butzes for, at the most, several days. The few belongings Clever brought to the Butz house did not evidence that he physically lived there for purposes of insurance coverage. *Amica, supra.* Clever's connection to his grandparents' home is even more tenuous; he admits to this fact in his appellate brief. Clever's periodic stays with the Runyans do not constitute a finding of residency. *Amica, supra. See Nationwide Mutual Insurance Co. v. Budd–Baldwin,* 947 F.2d 1098 (3d Cir.1991) (where appellee's brother stayed with appellee nearly every weekend, the court, applying Pennsylvania law, found that he did not meet the policy definition of "resident relative;" rather, the court found that to occupy a home means to be able to call that place one's own, to claim it as a place where one has the right to be and that temporary visits, however frequent, are insufficient to

establish residency); *St. Paul Fire and Marine Insurance Co. v. Lewis*, 935 F.2d 1428 (3d Cir.1991) (where policy provided coverage for "all relatives living with you," the court pointed to the dictionary definitions of "to live," i.e., to occupy a home, dwell, reside, and "reside," i.e., to settle oneself or thing in a place, to be stationed, remain, stay; the court, applying Pennsylvania law, found that occasional, sporadic and temporary contacts were insufficient to establish residency).

Based on the foregoing, we find that the trial court correctly concluded that there was no genuine issue as to any material fact and the appellees were entitled to judgment as a matter of law; Clever was not a resident of the Butz or Runyan household at the time of the accident. The entry of summary judgment in favor of the appellees was not an abuse of discretion. *Hetrick, supra.*

Affirmed.