**CUMBERLAND VALLEY SCHOOL DISTRICT, Petitioner,**

v.

**LYNN T., Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1998.
Decided Feb. 4, 1999.

Paul L. Stevens, Doylestown, for petitioner.

Vivian B. Narewood, Lancaster, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., KELLEY, J., and FLAHERTY, J.

McGINLEY, Judge.

The Cumberland Valley School District (District) petitions for review of a decision of the Pennsylvania Department of Education,

Bureau of Special Education Due Process Appeals Review Panel (Panel) which affirmed a hearing officer's determination that the District was responsible for providing a free appropriate public education (FAPE) to Lynn Thane (Lynn), that the District's proposed Individualized Education Program (IEP)[1] inappropriately denied a FAPE to Lynn and that the District pay ¼ of the cost of the evaluation of Lynn performed by Dr. Margaret Kay (Dr. Kay).

This action contains the same basic facts found in the controversy captioned: *T. Toe Thane and Phyu K. Thane v. Cumberland County School District Board of School Directors,* No. 1015 C.D.1997, 724 A.2d 978 (Pa.Cmwlth.1999) (Thane v. Cumberland). The facts in that opinion are incorporated by reference. Additional facts include the following: After the Thanes became residents, the District accepted the IEP from Chambersburg Area School District (Chambersburg), Lynn's previous school. The IEP called for Lynn to be in regular classes for some subjects and to receive more individual instruction in others. Additionally, the IEP called for Lynn to receive weekly counseling sessions and psychological services as needed. On September 19, 1995, the District notified Dr. and Mrs. Thane that it intended to have its Multiple Disciplinary Team (MDT) reevaluate Lynn.

In October 1995, Lynn's mental health deteriorated and he was hospitalized from October 7 through October 14, 1995, and again from October 31 through November 21, 1995. Dr. Kay evaluated Lynn on October 30, 1995. The next day the District met with Dr. and Mrs. Thane (the Thanes) and discussed placement. On the advice of two independent experts, the Thanes decided to enroll Lynn at the Pathway School (Pathway), a private school in Montgomery County for individuals with learning disabilities. The Thanes requested that the District approve Lynn's enrollment and pay the tuition pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1485.

On December 15, 1995, the District notified the Thanes and raised the issue of dual residency and stated that it was "unsure . . . who is responsible for payment of Lynn's education." Letter from Harold L. Pomraning, Coordinator of Pupil Services at 1; Reproduced Record (R.R.) at 168a. In January 1996, the District met with the Thanes to discuss revisions to Lynn's Comprehensive Evaluation Report (CER) and IEP. A new draft CER and a new draft IEP were submitted to the Thanes on January 16, 1996.

The Thanes were dissatisfied with the proposed IEP and requested a special education due process hearing by letter dated January 29, 1996. Upon request, the Thanes submitted Lynn's Pathway IEP to the District on February 7, 1996. Ultimately, on April 8, 1996, the District offered to implement the Pathway IEP with modifications, specifically the exclusion of the recommendations that addressed Lynn's mental health needs. The Thanes rejected the offer.

Thereafter the District again informed the Thanes that it did not consider Lynn a resident and declined responsibility for his education benefits. The Thanes requested a hearing by letter dated April 18, 1997. By letter to the Right to Education Office, dated May 21, 1997, the Thanes again requested a hearing. The parties submitted stipulations of fact, motions for summary judgment and briefs. The issues before the special education hearing officer were 1) Whether Lynn resided in the District and whether the District must provide him with a FAPE[2]? 2) If

---

1. An IEP is generally defined at 22 Pa.Code § 14.31(b), which provides "[A] written plan for the appropriate education of an exceptional student. The IEP shall be based on and be responsive to the results of the evaluation and shall be developed and implemented in accordance with this chapter and Chapter 342." 22 Pa.Code § 14.32(f) requires that an IEP include:

   (1) A statement of the student's present levels of educational performance.
   (2) A statement of annual goals and short-term learning outcomes which are responsive to the learning needs identified in the evaluation report.
   (3) A statement of the specific special education services to be provided to the student. . . .

2. Under the IDEA states receiving federal assistance are required to provide a FAPE to handicapped children. FAPE is defined in Section 1401(a)(18) of the IDEA as special education and related services that have been provided at public expense, under public supervision and direction, and without charge, meet the standards of the

the District was responsible, did it offer Lynn an appropriate program and placement? 3) Were the Thanes entitled to reimbursement for Lynn's placement at Pathway from 12/1/95 through the close of the 1995–96 school year? 4) Were the Thanes entitled to reimbursement for the evaluation they obtained from Dr. Kay in the fall of 1995?

■ On September 29, 1997, the hearing officer issued his decision. He stated that he did not have jurisdiction to determine whether Lynn was a resident. However, the hearing officer noted that the Court of Common Pleas of Cumberland County had determined that Lynn was a resident and ruled that it would be a denial of Lynn's rights if the hearing officer waited for the resolution of the residency issue by this Court. The hearing officer ruled that the District was responsible for providing Lynn with a FAPE after he enrolled with the District. The hearing officer also ruled that the FAPE provided by the District did not provide him with an appropriate program and placement. The hearing officer also concluded the District was required to pay Lynn's tuition at Pathway from January 29, 1996, when the Thanes requested a hearing, until the end of the school year and that Dr. Kay's evaluation was appropriate and not duplicative and the District was responsible to pay one-third of the total cost of the evaluation and the writing of the report. The District timely filed exceptions. The Panel dismissed the District's exceptions and affirmed the hearing officer's orders.[3]

The District contends that the Panel lacked jurisdiction to rule on the issue of residency and, alternatively, erred in finding that the District was responsible for providing Lynn with a FAPE, that the Panel erred as a matter of law when it affirmed the hearing officer's order that the District's proposed IEP was inappropriate and denied a FAPE to Lynn and that the Panel erred when it affirmed the hearing officer's order that the District pay one-fourth of the cost of Dr. Kay's report.[4]

Initially, the District contends that if the Panel did not have jurisdiction to decide Lynn's residency, then it had no authority to determine whether the District was responsible to provide Lynn with a FAPE. We have determined in Thane that Lynn was a resident and entitled to a FAPE from the District.

■ Next, the District contends that even if it was obligated to provide Lynn with a FAPE, it did so when it implemented the IEP developed by Chambersburg and that it was prevented from completing its evaluation of Lynn because he withdrew from school.[5] The regulation of the State Board of Education, 22 Pa.Code § 1431(c), provides for the movement of an exceptional student from one school district in the Commonwealth to another:

> If an exceptional student moves from one school district in this Commonwealth to another, the new district shall implement the existing IEP to the extent possible or shall provide the services and programs specified in an interim IEP agreed to by the parents until a new IEP is developed and implemented in accordance with this section and §§ 14.32–14.39 and until the completion of due process proceedings under §§ 14.61–14.68 (relating to procedural safeguards).

State educational agency, include an appropriate preschool, elementary, or secondary school education in the State involved and are provided in conformity with the individualized education program. The state must provide special education and sufficient related services to meet the child's unique needs in the least restrictive environment. *See Big Beaver Falls Area School District v. Jackson,* 155 Pa.Cmwlth. 219, 624 A.2d 806 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993).

**3.** Our review is limited to a determination of whether the adjudication is supported by sub-

stantial evidence, errors of law were committed, or constitutional rights were violated. *Punxsutawney Area School District v. Kanouff,* 663 A.2d 831 (Pa.Cmwlth.1995).

**4.** The Panel determined that the District pay $\frac{1}{4}$ rather than $\frac{1}{3}$ of the total cost of Dr. Kay's evaluation and report. The amount in question remained the same.

**5.** The District states that it later offered to implement the Pathway IEP without the non-educational psychological services.

When Lynn enrolled, the District had a duty to implement the Chambersburg IEP. The hearing officer found that the District implemented the IEP with respect to the courses where Lynn was in a regular classroom and that the District believed that Lynn did not need psychological services. Hearing Officer's Report, Proposed Stipulations of Fact # 13 at 2; R.R. at 33a.

The hearing officer did not determine whether Lynn received a weekly counseling session as required by the IEP and did not determine whether, in fact, Lynn needed psychological services. Without these findings, we are unable to determine whether the District fully implemented the Chambersburg IEP from the record before us. But we are able to review whether the District provided a FAPE. The United States Supreme Court established in *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) that the standard for compliance with IDEA is whether the IEP is reasonably calculated to enable the child to receive educational benefits. Soon after Lynn enrolled the District realized that he needed to be reevaluated and arranged for the MDT to perform the evaluation. Under 22 Pa.Code § 14.25(m), the District had forty-five school days to complete the evaluation and an additional fifteen school days to provide the Thanes with a comprehensive evaluation report (CER).

The Panel did not accept the District's reasoning that its responsibility to Lynn was limited to the Chambersburg IEP. The Panel stated that the "fatal fallacy with this argument is that a District would not be obligated to do anything more than either implement the child's prior IEE [sic], however inappropriate it was, or go through the motions of developing a new IEE [sic], however procedurally and substantively inappropriate these efforts were." Panel Decision at 7; R.R. at 10a.

The Panel found that the hearing officer correctly concluded that the IEP developed by the District was procedurally deficient with respect to the IDEA and the Pennsylvania Regulations and Standards. The hearing officer noted the following problems with which the Panel agreed:

a. A certified school psychologist was not part of the MDE as required by the Pennsylvania Standards. (FF # 46; 22 Pa. Code § 342.25(d)(2).

b. The required cover pages of the IEP which detail the type of program being offered, the related services, the duration of the IEP, various services that needed to be considered and reviewed and the like are noticeably absent. (FF # 48; 22 Pa. Code § 14.332(f); § 342.32(d).

c. No NORA (Notice of Recommended Assignment) was ever proffered by the school district to the family clearly enunciating the actual kind of proposed placement either within the school district or within the intermediate unit. (FF # 31, FF # 35, FF # 37; 22 Pa.Code § 14.42; § 342.42(a), (b).

d. There is no evidence in the record that the district ever attempted to go to the Pathway School in order to develop further the CER through the use of its own psychologist and other staff. Further, there is no evidence in the record that indicates that Lynn would not have been accessible to the district in order to be made available for further evaluations. Pathway School is not so far as to have imposed an unreasonable burden upon the district. Moreover, the Standards at § 342.25(p)(2) foresee the potential and real situation that the district and Lynn found themselves in this matter when it goes to state "an extension of time of no more than 60 school days is permitted when specialized diagnostic assessment or medical assessment services or both, are not available in the school district are necessary for the completion of the multidisciplinary evaluation. Clearly, the district might have been able to use this facet of the State Standards to garner additional information."

Hearing Officer's Report at 9–10; R.R. at 37–38a.

In addition to these outright procedural irregularities, the CER and the IEP devised by the District also failed to meet the substantive requirements of the IDEA and the Pennsylvania regulations and standards. The Hearing Officer described the degrees of need in the CER as "sketchy and thin" and

the Panel specifically agreed. Panel Decision at 8; R.R. at 9a. According to the hearing officer, the District's IEP was vague, failed to address a means of handling Lynn's emotional and behavioral disorders and contained immeasurable standards. Hearing Officer's Report at 11; R.R. at 39a. The District did not appeal the finding of procedural and substantive deficiencies in the IEP. The District's argument that it did not have enough time to complete the IEP fails because the District did not decide to evaluate Lynn until September 19, 1995, and did not produce a final IEP until April 8, 1996, when it offered to implement a version of the Pathway IEP. Furthermore, the District never completed an adequate and sufficient IEP. We agree with the Panel's determination that the District failed to provide Lynn with a FAPE.[6]

The District next contends that it should not have to reimburse the Thanes for ¼ the cost of Dr. Kay's evaluation because parental reimbursement is appropriate only when an IEP is sought after a school district offers an inadequate IEP. Here, the District contends there was no evidence that Dr. Kay's evaluation was the result of a disagreement with the District's evaluation. The conditions under which parents receive reimbursement for an independent evaluation is set forth in 22 Pa.Code § 14.67(f):

> Parents have the right to an independent evaluation at public expense if the parents disagree with an evaluation obtained by the school entity. The school entity may initiate a hearing under § 14.64 (relating to impartial due process hearing) to show that its evaluation is appropriate. If the final decision is that the school entity's evaluation was appropriate, the parents may present a privately-commissioned independent educational evaluation not at public expense.

We addressed this regulation in *Kozak v. Hampton Township School Dist.*, 655 A.2d 641 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 652, 666 A.2d 1060 (1995). In *Kozak*, Gary Kozak's (Kozak) par-

ents had hired a psychiatrist and a psychologist to evaluate Kozak. Both evaluations diagnosed him with Attention Deficit Hyperactivity Disorder (ADHD). Kozak's father (Mr. Kozak) requested that the Hampton Township School District (School) conduct a multidisciplinary evaluation (MDE). The MDE concurred with the diagnosis of ADHD and also found that Kozak met the criteria for Serious Emotional Disturbance and should be classified as exceptional. *Kozak*, 655 A.2d at 643–644. Mr. Kozak objected to this diagnosis. After the Panel affirmed the hearing officer's order that the School and Mr. Kozak prepare an IEP, Mr. Kozak appealed to this Court and requested that the School reimburse him for all expenses, including the expense of the evaluations. *Kozak*, 655 A.2d at 645. Citing 22 Pa.Code § 14.67, we held that Mr. Kozak was not entitled to be reimbursed when the evaluations were not done because of a disagreement with the School District, but on his own initiative. *Kozak*, 655 A.2d at 647.

■ Here, the District notified the Thanes that it intended to reevaluate Lynn on September 19, 1995. Prior to the completion of its evaluation, the Thanes hired Dr. Kay to evaluate Lynn. The Thanes did not engage Dr. Kay because of a disagreement with the District's evaluation but because Lynn's behavior was increasingly erratic. Further, we distinguish the present case from *Kozak* because a certified school psychologist was not a member of the MDT. And later, the District incorporated Dr. Kay's evaluation and report into its IEP. The hearing officer found that Dr. Kay's report did not duplicate the earlier evaluation of Lynn performed on March 24, 1995, and was appropriate. The Panel affirmed the hearing officer's determination, stating "It is ironic that the District did not include the required certified school psychologist on the MDT, except indirectly Dr. Kay (via use of her report in the revised CER), and yet it refuses to recognize responsibility to pay for her time." Panel Decision at 9; R.R. at 11a. Because the District failed to include a psychologist as required

---

6. The District did not directly appeal the portion of the Panel's order that required the District to reimburse the Thanes for tuition payments to

Pathway from January 19, 1996, until the end of the 1995–96 school year.

and because the District used the report when it prepared the IEP for Lynn on the MDT, it follows that the District pay a fair portion of the cost.

Accordingly, the order of the Panel is affirmed.

### ORDER

AND NOW, this 4th day of February, 1999, the order of the Special Education Due Process Appeals Review Panel in the above-captioned matter is affirmed.

Dissenting opinion by Judge PELLEGRINI.

PELLEGRINI, Judge, dissenting.

I respectfully dissent for the same reasons set forth in *Thane v. Cumberland Valley School District Board of School Directors*, 724 A.2d 978 (Pa.Cmwlth.1999.)

Judges SMITH and FLAHERTY join in this dissenting opinion.