**T. Toe THANE and Phyu K. Thane**

v.

**CUMBERLAND VALLEY SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1998.

Decided Feb. 4, 1999.

Richard C. Snelbaker, Mechanicsburg, for appellant.

Vivian B. Narehood, Lancaster, for appellee.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., KELLEY, J., and FLAHERTY, J.

McGINLEY, Judge.

Cumberland Valley School District, Board of School Directors (Board) appeals from an order of the Court of Common Pleas of Cumberland County (common pleas court) which reversed the Board's determination that Lynn Thane (Lynn) was not a resident of

Cumberland Valley School District (District) and remanded to the Board to determine whether Dr. T. Toe Thane (Dr. Thane) and Phyu K. Thane (Mrs. Thane) (collectively, the Thanes) were entitled to reimbursement for Lynn's education at the Pathway School.

In August 1995, the Thanes decided that Mrs. Thane would move with her two sons, Wynn and Lynn, from the family dwelling in Chambersburg to a location closer to Harrisburg Academy, where their younger son, Wynn, was to attend private school. The Thanes determined that Lynn would accompany his mother and brother because Mrs. Thane was the primary caregiver. Lynn required special education so Mrs. Thane investigated public school districts near Harrisburg Academy for the one best suited for Lynn's needs.

The Thanes leased a townhouse in Hampden Township and enrolled Lynn at Good Hope Middle School (School) in the District. Mrs. Thane moved their clothing, furniture and possessions to Hampden Township. The Thanes intended to maintain this arrangement for seven years or until Wynn graduated from Harrisburg Academy. Mrs. Thane and her children spent Monday through Friday and alternate weekends in Hampden Township. Other weekends and most vacations were spent in Chambersburg.

A District school bus transported Lynn daily between the townhouse and School. Mrs. Thane received mail and phone calls from the District at the Hampden Township address. Mrs. Thane paid a residence tax to Cumberland County, where Hampden Township is located, changed her voter registration from Chambersburg to Hampden Township and changed her driver's license address.

In October 1995, Lynn's mental health deteriorated and he was hospitalized from October 7 through October 14, 1995, and again from October 31 through November 21, 1995. On the advice of two independent experts the Thanes decided to enroll Lynn at the Pathway School (Pathway), a private school for individuals with learning disabilities in Montgomery County. The Thanes requested that the District approve Lynn's enrollment and pay the tuition, pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1485.

On May 2, 1996, the District formally notified Dr. and Mrs. Thane that Lynn never established a residency within the District and was not entitled to any educational benefits. The District refused to pay any fees to Pathway for the 1995–96 school year or for any time thereafter. Letter from Anthony J. Colistra, Ed.D., Assistant Superintendent–Secondary Education, May 2, 1996, at 1; Reproduced Record (R.R.) at 5a.

The Thanes appealed the District's decision to the Board by written notice dated May 10, 1996. The Board held an evidentiary hearing on June 3, 1996. On August 8, 1996, the Board affirmed the District's determination on the basis that the townhouse in Hampden Township was a temporary residence for Mrs. Thane and her two sons, established only for their convenience and not with the intent of making it their primary residence. The Board used the concept of primary residence to interpret the terms "resident" and "resides" in Section 1302 of the Public School Code of 1949 [1] (School Code), which states that a child shall be considered a resident of the district in which his parents or the guardian of his person resides.

According to the Board, the primary residence is the domicile and found that the Thanes were domiciled in Chambersburg. In justifying its interpretation, the Board recognized that there is a close association between the terms "residence" and "domicile" in Pennsylvania jurisprudence; to define "resident" or "resides" as something less than "domicile" would lead to an absurd and unreasonable result, because it would enable a child to be a resident of two school districts at the same time; and any definition which did not include the concept of "domicile" would burden school districts because parents could send their children to school in a district where they did not pay property taxes. Adjudication of Board of School Directors at 9–17; R.R. at 106a–114a.

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1302.

The Thanes then appealed to the common pleas court. After receiving briefs and hearing oral argument, the common pleas court determined that the Board mistakenly interpreted the terms "resident" and "resides". The common pleas court found that the terms "resident" and "resides" were used in the School Code without any refinements. Common Pleas Court Opinion, March 25, 1997, at 11. The common pleas court, citing *Norman v. Pennsylvania National Ins. Co.,* 453 Pa.Super. 569, 684 A.2d 189, 191 (1996), found that the classical definition of a "residence" is "a factual place of abode evidenced by a person's physical presence in a particular place." Common Pleas Court Opinion, March 25, 1997, at 10. The common pleas court then determined that Mrs. Thane was a resident of the District and that as a general rule a minor has the same residence as the parent with whom he lives. Because Lynn resided with Mrs. Thane in the District, the common pleas court held that Lynn was a resident of the District. The common pleas court reversed the Board and remanded to determine whether the education Lynn received in the District was inappropriate under the IDEA and if reimbursement for tuition paid to Pathway was warranted.

▬▬ The Board appeals, contending that the temporary presence of Lynn and Mrs. Thane in the District does not constitute a "residence", ergo, the District need not provide Lynn with educational benefits under the School Code. The Honorable J. Wesley Oler, Jr. ably disposed of this issue in his comprehensive opinion. Therefore, we shall affirm on the basis of that opinion. *In Re: Residence Hearing before the Board of School Directors, Cumberland Valley District, T. Toe Thane and Phyu K. Thane,* 46 Cumberland Law Journal 222 (1997). However, we vacate the portion of the common pleas court's order that remanded the matter to the Board in order to determine whether the education Lynn received in the District was inappropriate under the IDEA and if reimbursement for tuition paid to Pathway was warranted. This Court has affirmed the determination of this issue by the Pennsylvania Department of Education, Bureau of Special Education Due Process Appeals Review Panel in *Cumberland Valley School District v. Lynn T.,* No. 3386 C.D.1997, so the common pleas court's remand is moot.

*ORDER*

AND NOW, this 4th day of February, 1999, the order of the Court of Common Pleas of Cumberland County in the above-captioned matter is affirmed with respect to the issue of Lynn Thane's residence. The portion of the order remanding the case to the Cumberland County School District Board of School Directors is vacated as moot.

PELLEGRINI, Judge, dissenting.

I respectfully dissent to the majority's decision that the Thanes were entitled to reimbursement for their son's education at a special school located outside the school district in which they were domiciled.

Dr. and Mrs. Thane co-owned and lived in their family dwelling in Chambersburg with their two sons, Wynn and Lynn. In August 1995, Mrs. Thane and her two sons moved from their family dwelling in Chambersburg to a rented townhouse in Hampden Township so that she could be closer to Wynn who was attending Harrisburg Academy. Lynn accompanied his mother and brother because Mrs. Thane was his primary caregiver. Due to Lynn's learning disabilities, he required special education and attended Good Hope Middle School in the Cumberland County School District. Dr. Thane remained living in Chambersburg where he had a medical practice. During the week, Mrs. Thane and her two sons remained in Hampden Township, but on alternating weekends and most vacations, they returned to their home in Chambersburg to be with Dr. Thane. Mrs. Thane's counsel conceded at oral argument that she and her two sons were domiciliaries of Chambersburg.

Because Lynn's health deteriorated and on the advice of experts, the Thanes enrolled Lynn at the Pathway School in Montgomery County, a private school for individuals with learning disabilities. The Thanes requested that the Cumberland County School District (School District) approve Lynn's enrollment and pay his tuition pursuant to the Individuals with Disabilities Education Act, 20 U.S.C.

§§ 1400–1485.[1] The School District refused to pay Lynn's fees because he was not a "resident" of the School District as required under Section 1302 of the Public School Code of 1949 (Public School Code),[2] and the Thanes appealed to the School Board. The School Board affirmed the School District's determination finding that the townhouse in Hampden Township was a temporary residence established only for the Thanes' convenience, and that their primary residence—or where they were "domiciled"—was in Chambersburg. It found that the School District was not required to pay tuition outside its district and, in doing so, relied on the concept of "primary residence" to interpret the terms "resident" and "resides" used in Section 1302 of the Public School Code which provides a free public school education to children of residents in its school district. Section 1302 of the Public School Code states, in relevant part:

> A child shall be considered a *resident* of the district in which his parents or guardian *reside*. (Emphasis added.)

On appeal, the trial court determined that the School Board had improperly interpreted the term "resident" because in enacting the Public School Code, the legislature chose to use the terms "resident" and "resides", not "domicile" as preferred by the School Board. Instead, the trial court found that the classical definition of "residence"—a factual place of abode evidenced by a person's physical presence in a particular place—should have been relied upon instead in making its decision. The trial court reversed and remanded the School Board's decision for it to determine if reimbursement for tuition paid to the Pathway School was warranted.

On appeal to this Court, the School Board argues that the temporary presence of Mrs. Thane in the Cumberland County School District did not constitute "residency" and, therefore, it was not required to pay her son's tuition for an education outside the School District. The majority disagrees and affirms relying on the trial court's definition of "resident." In doing so, the majority essentially concludes that under the Public School Code, "resident" does not mean the same thing as "domicile."[3] I disagree with that interpretation because the purpose of Section 1302 of the School Code, as well as other sections also using the word "resident", is to provide only permanent inhabitants of a community with the benefits of free public education.

Initially, just because the statute uses the term "resident" does not mean that term should not be defined as "domicile." In fact, most often, the term "resident" has been defined in a statute to mean "domicile" and not mere residency. For example, the United States Supreme Court has interpreted the term "resident" to mean "domicile" under comparable circumstances. In *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976), a case that affirmed our decision in *McCarthy v. Philadelphia Civil Service Commission*, 19 Pa.Cmwlth. 383, 339 A.2d 634 (1975), a firefighter and his family owned property in Philadelphia, Pennsylvania and in Villas, New Jersey. McCarthy moved his family to their New Jersey property due to vandalism to their home in Philadelphia and sold the Philadelphia property. McCarthy, who was required to be a resident of the City of Philadelphia in order to be a firefighter in the City, did not move to New Jersey but instead moved in with his mother who lived in Philadelphia. While living with his mother, he received mail at her address, registered to vote using her address, and used her address for various other financial purposes.

---

1. *See also Florence County School District Four v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), where the United States Supreme Court held that if a public school did not provide an appropriate, free education to one of its disabled child residents, the school district in which the child resided could be ordered to pay for the child's education at a private school.

2. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13–1302.

3. "Domicile" has been defined as: "[T]he place where he lives, in distinction from that where he transacts his business, the place where he chooses to abide, in distinction from that in which he may be for a temporary purpose." *McKenna v. McKenna*, 282 Pa.Super. 45, 422 A.2d 668, 669 (1980). "Bona fide residence" has also been defined as "domicile"—actual residence coupled with the intention to remain there permanently or indefinitely. *Id.*

McCarthy usually spent two or three nights with his family in New Jersey and there was no question that he was still maintaining a marital relationship with his wife and that he was the sole financial supporter of the family.

After McCarthy was terminated from employment because he did not meet the City of Philadelphia's residency requirement, he appealed to the Civil Service Commission which affirmed as did the trial court. On appeal to this Court, we held that a person could have more than one residence, but only one "legal residence" or "domicile", and that the Civil Service Commission properly interpreted the term "bona fide residence" in their ordinance to mean "domicile." We then affirmed the trial court's findings that McCarthy no longer owned property in Philadelphia; he spent as much time in New Jersey as he did at his mother's home in Philadelphia; he continued to maintain a marital relationship with his wife while she lived in New Jersey on property they co-owned; and that he was the sole supporter of his wife and family living in New Jersey. On appeal, the Pennsylvania Supreme Court denied a petition for review, but on appeal to the United States Supreme Court, our decision was affirmed. For other cases that also interpret "resident" as used in an enactment to mean "domicile," see *Petition of Pippy*, 711 A.2d 1048 (Pa.Cmwlth. 1998); *In re Prendergast*, 673 A.2d 995 (Pa. Cmwlth.1996); *Mathias v. Richland School District*, 140 Pa.Cmwlth. 298, 592 A.2d 811 (1991); *In re Jones*, 102 Pa.Cmwlth. 103, 516 A.2d 778 (1984); *Civil Service Commission of City of Pittsburgh v. Parks*, 80 Pa.Cmwlth. 134, 471 A.2d 154 (1984); *Viggiano v. Civil Service Commission of City of Philadelphia*, 74 Pa.Cmwlth. 191, 459 A.2d 875 (1983); *City of Meadville Firemen's Civil Service Commission v. Neff*, 69 Pa.Cmwlth. 259, 450 A.2d 1078 (1982); *Department of Public Welfare v. Kallinger*, 66 Pa.Cmwlth. 198, 443 A.2d 1219 (1982); *Rodgers v. Unemployment Compensation Board of Review*, 40 Pa. Cmwlth. 552, 397 A.2d 1286 (1979); *Greenwood v. Hildebrand*, 357 Pa.Super. 253, 515 A.2d 963 (1986).

In determining whether a statute that uses the term "resident" actually means "resident" or instead means "domicile", our Supreme Court has held that it is necessary for the purpose as well as the context of the language be kept in view. *Robinson v. Robinson*, 362 Pa. 554, 67 A.2d 273 (1949); *Amica Mutual Insurance Company v. Donegal Mutual Insurance Company*, 376 Pa.Super. 109, 545 A.2d 343 (1988). Regardless of the terms used in the statute, the language of the statute must be construed in a manner consistent with the purpose of the statute. *Robinson.*

In this case, the General Assembly's purpose in enacting Section 1302 of the Public School Code was to ensure that children who lived with persons other than their parents and outside of their own community were also entitled to a free public education in the community of their guardian. Section 1302 of the Public School Code provides the following:

> When a *resident* of any school district keeps in his home a child of school age, not his own, supporting the child gratis as if it were his own, such child shall be entitled to all free school privileges accorded to *resident* school children of the district, including the right to attend the public high school maintained in such district or in other districts in the same manner as though such child were in fact a *resident* school child of the district, and shall be subject to all the requirement placed upon *resident* school children of the district. Before such child may be accepted as a pupil, such *resident* shall file with the secretary of the board appropriate legal documentation to show dependency or guardianship or a sworn statement that he is a *resident* of the district, that he is supporting the child gratis, that he will assume all personal obligations for the child relative to school requirements, and that he intends to so keep and support the child continuously and not merely through the school term. (Emphasis added.)

From a reading of this section, it is clear that the General Assembly intended the term "resident", as used in this provision, to mean "domicile" requiring the permanency of a community member. This is evident because under this section, the permanent member of the community that takes a child in, i.e., a

guardian such as a grandparent or other relative, is expected to continue taking responsibility for the child even after the school term is concluded.

It is also evident that "resident" as used in Section 1302 of the Public School Code means "domicile" because several other sections of the Public School Code reference "non-resident" children and their right to a public school education as well. For example, Section 1301[4] is entitled, **Age limits; temporary residence**; Section 1305[5] is entitled, **Non-resident child placed in home of resident**; and Section 1306[6] is entitled, **Non-resident inmates of children's institutions**. If "resident" did not mean the same thing as "domicile" under the Public School Code, including Section 1302, there would be no need to differentiate between "resident" and "non-resident" children in a school district.

Finally, one must only look to local taxation requirements in any community to understand why "resident" must mean "domicile" under the Public School Code. A major purpose of local taxation is to financially support the local school district. Individuals who merely take up temporary residency in a school district, such as in this case, do not intend to remain there permanently. Consequently, they do not have a stake in supporting the local school district and do not pay the local wage tax that would normally be paid where they are domiciled. Essentially, by failing to interpret the term "resident" as "domicile", parents would be free to rent a room in that district and sporadically reside there, yet not contribute financially and fully to that school system. Moreover, and as important, it would disrupt the system the General Assembly has, for better or for worse, established for determining which district is responsible for educating which children.

Because the General Assembly intended that the term "resident" as used in Section 1302 of the Public School Code to mean "domicilliary", I would reverse the trial court's decision and find that the Thanes were not residents of Cumberland County and Cumberland Valley School District was not responsible to repay tuition for Lynn Thane's attendance at the Pathway School.

Judges SMITH and FLAHERTY join in this dissenting opinion.