Scott MILLER and Glenda
Miller, Appellants

v.

Daniel POOLE and the Wall Rose
Mutual Insurance Company,
Appellees.

Superior Court of Pennsylvania.

Submitted March 26, 2012.

Filed June 4, 2012.

Timothy J. Huber, Lebanon, for appellants.

Stephen P. McCloskey, Washington, for Wall Rose, appellee.

Daniel Poole, appellee, prose.

BEFORE: FORD ELLIOTT, P.J.E., ALLEN, J., and STRASSBURGER,* J.

OPINION BY STRASSBURGER, J.:

Scott and Glenda Miller (the Millers) appeal from the order of October 14, 2011,[1] which denied their motion for summary judgment and granted summary judgment in favor of the Wall Rose Mutual Insurance Company (Wall Rose). We reverse and remand for further proceedings consistent with this opinion.

Helen Poole owned a home at 301 Cottage Avenue in Fayette County, Pennsylvania, and was the named insured on a homeowner's insurance policy issued by Wall Rose. Helen's son, Abe Poole, and 18–year–old grandson, Daniel Poole, spent

---

* Retired Senior Judge assigned to the Superior Court.

1. The dispositive order was dated October 13, 2011, but not entered on the docket until October 14, 2011. We have amended the caption accordingly.

the night of April 1, 2005, at Helen's house, as Helen was in the hospital and the two men's new apartment did not yet have working utilities. Helen Poole died the following day: April 2, 2005. Because Helen's will granted Abe a life estate in her house, Abe and Daniel moved their belongings from the new apartment to Helen's house and continued to stay there until September 2005.

On September 2, 2005, Daniel ignited the gas stove at the house to light a cigarette, and then left the house without turning off the stove. A fire ensued and spread to the Millers' adjacent property. The Millers sued Daniel for the damages caused by the fire. Wall Rose refused to defend Daniel and denied coverage for the Millers' property damage. The Millers eventually obtained a default judgment against Daniel.

On November 8, 2007, the Millers filed a declaratory judgment action against Daniel and Wall Rose, seeking a ruling that Wall Rose had a duty to indemnify Daniel for the judgment entered against him. After discovery, the Millers and Wall Rose filed cross-motions for summary judgment. The trial court granted Wall Rose's motion and denied the Millers' motion by order filed on October 14, 2011. The Millers filed a timely notice of appeal.[2]

The Millers raise two questions for our consideration.

A. Did Wall Rose's liability insurance policy, affording coverage to resident relatives of Mrs. Poole's household, cover a loss caused by the negligence of her grandson, Daniel Poole, while living at the insured property on the date of the fire?

B. Did the uncontradicted facts warrant the conclusion that Daniel Poole was a resident of his grandmother's household as of the date of her death, particularly in view of the mandate that any ambiguity in the application of the language be construed against Wall Rose?

Millers' Brief at 4 (trial court answers omitted).

On appeal from an order granting a motion for summary judgment our review is plenary, and we may reverse the order of the trial court only if that court committed an error of law or abused its discretion. *ADP, Inc. v. Morrow Motors Inc.*, 969 A.2d 1244, 1246 (Pa.Super.2009). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Ragnar Benson, Inc. v. Hempfield Twp. Mun. Authority*, 916 A.2d 1183, 1188 (Pa.Super.2007).

The insurance policy at issue provides that Wall Rose will pay, up to its limit, sums for which an "insured" is liable for property damage or bodily injury. The questions before us center around the interpretation of the provision of the contract which defines who is an "insured" under the policy.[3] The relevant language is as follows.

7. "Insured" means:
a. "you" [the person named as the insured on the declarations page, which in this case is Helen Poole];
b. "your" relatives if residents of "your" household;
c. persons under the age of 21 residing in "your" household and in "your" care or in the care of "your" resident relatives; and

---

2. The trial court did not order the Millers to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

3. We note that this policy was issued by Wall Rose after Helen Poole's death. However, Helen Poole is the person listed on the declarations page as the insured.

d. "your" legal representative, if "you" die while insured by this policy. This person is an "insured" only for liability arising out of the "insured premises". An "insured" at the time of "your" death remains an "insured" while residing on the "insured premises".

Wall Rose Policy Number 0002710 HO, effective 7/29/2005 to 7/29/2006, at 2–3.

There is no question that Daniel Poole was a relative of Helen Poole, and that he was under the age of 21 at the relevant time. The dispute is based upon the meanings of the terms "residents," "residing," and "household," none of which is defined in the policy.

The Millers argue that, having lived at Helen Poole's home continuously from April 1, 2005 until the time of the fire, Daniel Poole was a "resident" of Helen Poole's "household" at the time of the fire, rendering him an "insured" under paragraph 7(b) of the policy. Millers' Brief at 13.[4]

The trial court rejected the Millers' argument, determining that one cannot become a member of an insured's household after the insured's death, as this Court has defined "household" to mean "those who dwell under the same roof and compose a family." Trial Court Opinion (TCO), 1/27/2010, at 11 (quoting *Boswell v. S. Carolina Insurance Company*, 353 Pa.Super. 108, 509 A.2d 358, 361–362 (1986)). *See also* TCO, 10/14/2011, at 10. Based upon this Court's prior interpretation and application of the term "resident," the trial court held that, under the facts of this case "Daniel Poole's overnight stay at his grandmother's home prior to her death was insufficient to establish him as a resi-

dent of her household." TCO, 10/14/2011, at 15 (footnote omitted).

 We consider the trial court's determinations mindful of the following principles. "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract." *Penn–America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 264 (Pa.Super.2011) (quoting *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 2 A.3d 526, 540 (2010)).

 "When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, ... which will be given its commonly accepted and plain meaning[.]" *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 647 (2009) (citations omitted). "When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." *Insurance Adjustment Bureau, Inc. v. Allstate. Ins. Co.*, 588 Pa. 470, 905 A.2d 462, 468 (2006).

 "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* at 468–469. Additionally, "[t]he provisions of an insurance contract are ambiguous if its terms are subject to more than one reasonable

---

4. The Millers make the alternative argument that Daniel had become a resident of his grandmother's household as of the time of her death on April 2, 2005. Millers' Brief at 15.

Due to our disposition of the first question, we need not address the Millers' alternative argument.

interpretation when applied to a particular set of facts." *Kropa v. Gateway Ford,* 974 A.2d 502, 508 (Pa.Super.2009) (internal quotation omitted). "When a provision in a policy is ambiguous, ... the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Erie Ins. Exchange v. Conley,* 29 A.3d 389, 392 (Pa.Super.2011) (quoting *Government Employees Ins. Co. v. Ayers,* 955 A.2d 1025, 1028–29 (Pa.Super.2008)).

As noted above, the question whether contract language is ambiguous depends on the particular facts to which the policy language is to be applied. We have uncovered no Pennsylvania cases with fact patterns materially similar to that of the instant case. However, courts in other jurisdictions also have found the term "household" to be ambiguous in comparable circumstances.

In *Gibson v. Callaghan,* 158 N.J. 662, 730 A.2d 1278 (1999), the named insured moved out of her house after suffering an injury, and her grandson and his wife moved into the home during the homeowner's absence. The named insured never returned to the home to reside there simultaneously with her grandson and his wife. The Supreme Court of New Jersey held that, under these circumstances, the term " 'resident of your household' is readily susceptible of two interpretations: a resident of [the insured premises], or a person residing in the same house as [the named insured]." *Id.* at 1286. Therefore, the court construed the policy against the insurer and held that residing on the insured premises qualified the grandson's spouse as an "insured."

In *Erie Insurance Exchange v. Stephenson,* 674 N.E.2d 607 (Ind.App.1996), the policyholder moved out of her own home and into her daughter's home due to failing health. The named insured's grandson changed places with her, moving onto the insured premises. Having determined that the term "household" was ambiguous, the court held that the grandson was a resident of the named insured's household, qualifying him as an insured under the policy. *Id.* at 610.

While the facts of these cases from our sister states are not on all fours with those of the instant case, the cases all present unusual circumstances which render the policy language ambiguous. The proper result in all of the cases, thus, is to construe the ambiguous language in favor of the insured. Therefore, we hold that, under the unusual factual scenario presented in the instant case, the language " 'your' relatives if residents of 'your' household" is reasonably susceptible to more than one interpretation. It plausibly could mean either that Helen Poole's relatives qualified as "insureds" (1) if they lived in the same house with her, or (2) if they lived on the premises insured by her under the Wall Rose policy.

There is no dispute that Daniel Poole began staying at the insured premises on April 1, 2005, and continued to live there until the fire occurred on September 2, 2005. As a question of physical fact, Daniel Poole was a resident of the insured premises at the time of the fire. Construing the term "household" against Wall Rose as the drafter of the contract, we hold that Daniel Poole was an "insured" under the policy as a resident of Helen Poole's household. As drafter of the contract, Wall Rose had it within its power to define the terms "resident" and "household" in a way that would require the interpretation they now advance. It chose

not to do so.[5]

The Pennsylvania cases which the trial court felt required the finding that Daniel Poole was not an "insured" under the policy are substantially dissimilar factually, and did not present an ambiguity as to the term "household." For example, in *Wall Rose Mutual Insurance Company v. Manross*, 939 A.2d 958 (Pa.Super.2007), the insured's grandson "was a transient who sporadically stayed at various places, including his grandmother's ... home." *Id.* at 968–969. Based upon the common-law meaning of the term "resident," [6] we affirmed the trial court's determination that the grandson was not an "insured" under the policy because his visits to his grandmother's house were "erratic," and his presence there "was more in the vein of a houseguest than a member of the household." *Id.* at 964.[7]

In contrast, Daniel Poole's physical presence at his grandmother's house was not sporadic. He began being physically present at the house on April 1, 2005 and maintained his physical presence at the insured premises from that day until the fire occurred on September 2, 2005. From April 1, 2005 to September 2, 2005, Daniel Poole's "factual place of abode evidenced by [his] physical presence," *Manross*, 939 A.2d at 965, was the premises insured under Wall Rose's policy. Therefore, under the precedent discussed above, Daniel Poole was a resident of his grandmother's house from April 1 to September 2, 2005. To distinguish the time of Daniel Poole's initial physical presence from his continued presence after his grandmother died is to incorporate his intentions into the analysis, which is "not a relevant consideration" to the determination of a person's residence. *Id.* at 969.

Therefore, we hold that the trial court erred in entering judgment in favor of Wall Rose and against the Millers. There are not material issues of fact, and as a matter of law Daniel Poole is an "insured" under the Wall Rose policy.

Order reversed. Case remanded for proceedings consistent with this opinion.

---

5. We also note that Wall Rose took statements under oath from Abe and Daniel Poole, pursuant to a policy provision which requires the "insured" to do so upon Wall Rose's request. While we agree with the trial court that this fact is not "dispositive of the issue at hand," TCO, 10/14/2011, at 15 n. 4, it supports this Court's conclusion that Abe and Daniel Poole were "insureds" under the policy.

6. *See, e.g., In re Residence Hearing Before the Board of School Directors, Cumberland Valley School District*, 560 Pa. 366, 744 A.2d 1272, 1275 (2000) ("Residence, ... is a factual place of abode evidenced by a person's physical presence in a particular place."); *In re Lesker*, 377 Pa. 411, 105 A.2d 376, 380 (1954) ("[I]n strict technical terminology a habitation may be defined as an abode for the moment, residence a tarrying place for some specific purpose of business or pleasure, and domicile the fixed, permanent, final home to which one always intends to return.")

7. *See also Norman v. Pennsylvania National Insurance Company*, 453 Pa.Super. 569, 684 A.2d 189 (1996) (holding that tortfeasor was not a resident of his stepfather's household where his visits there were "sporadic at best"); *Amica Mutual Insurance Company v. Donegal Mutual Insurance Company*, 376 Pa.Super. 109, 545 A.2d 343 (1988) (holding that daughter was not a resident of her father's household, despite her intention to reside with him until leaving for college, because there was no evidence "that she physically lived there").