Dorothy Barnett, et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued January 28, 1985, before Judge COLINS and Senior Judges BARBIERI and KALISH, sitting as a panel of three.

*Charles O. Barto, Jr.,* for petitioners.

*Joel M. Ressler,* Deputy Attorney General, with him, *Allen C. Warshaw,* Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE COLINS, April 26, 1985:

This Petition for Review is on behalf of several nursing home patients (petitioners)[1] who have been receiving skilled nursing care under the Medical Assistance Program.[2] Following an evaluation by a Pennsylvania Department of Public Welfare (DPW) Inspection of Care Team,[3] the DPW determined that petitioners should be reclassified from skilled care to intermediate care. Petitioners appealed this determination, and a hearing was held on June 6, 1983, at

---

[1] There are 32 petitioners, patients in Saunders House Nursing Home, listed in the above-captioned matter; however, thirteen petitioners are no longer involved in this appeal. The following patients have accepted the determinations of the Department of Public Welfare and have withdrawn their appeals: Dorothy Barnett, Eunice Speicher, Christine Roth, Virginia Gifford, Ruth Davis and Alice Geiger. The following patients are now deceased and their appeals have been withdrawn: Lottie Thompson, Sue Byers, Ella Mae Kelly, Elizabeth Law, Albert Marks, Louise Vaughn and Gerald Watson.

[2] Title XIX of the Social Security Act (commonly called Medicaid), 42 U.S.C. §§1396-1396(P). Section 1396 provides in relevant part:

The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health and Human Services, State plans for medical assistance.

[3] The Inspection of Care Team observed and evaluated petitioners on February 1, 2 and 3, 1983.

which a hearing examiner ruled in favor of the DPW. On July 22, 1983, the decision of the hearing examiner was affirmed by the DPW Office of Hearings and Appeals. Petitioners filed a request for reconsideration with the Executive Deputy Secretary of the DPW on August 5, 1983, which was denied on September 1, 1983. This appeal followed.

Petitioners were reclassified subsequent to a revision of DPW's regulations concerning skilled and intermediate nursing care facilities.[4] This revision came about following an audit of the Allegheny County Nursing Home by federal officials in 1980. The auditors discovered that physicians were qualifying patients for skilled care under DPW regulations, but also discovered that these same patients would not qualify for skilled care under federal regulations. Therefore, in July of 1982, DPW proposed a new classification system and a revision of its regulations in order to comply with federal law.

The United States Department of Health and Human Services (HHS) rejected the 1982 proposal as being inconsistent with federal law.[5] The DPW had to once again revise their regulations and resubmit them to the HHS for approval. DPW's revised and final regulations were adopted on January 8, 1983, and contained criteria drafted in collaboration with a representative of the Health Care Financing Administration (HCFA), a branch of the HHS. After reviewing

---

[4] The DPW regulations pertaining to nursing facility care are found at Chapter 1181 of Title 55 of the Pennsylvania Code.

[5] The medicaid program is a cooperative federal-state arrangement, but all states that choose to participate must comply with the federal requirements of Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396(P). One of those requirements is that each state must submit a plan for approval by the Secretary of HHS, and must adhere to federal laws and regulations. *See Marsh v. Department of Public Welfare*, 18 Pa. Commonwealth Ct. 216, 409 A.2d 926 (1979).

the final regulations, HCFA responded by letter received March 31, 1983 by the DPW. The letter provided in part:

A thorough review of the level of care criteria was conducted by both HCFA Regional Office and headquarters staff. The revised State definition is now consistent with federal statute and regulation regarding the definition of skilled nursing care.

Although DPW's new system of classification was approved by the HHS, petitioners are now contending that the new regulations, which reclassify them from skilled nursing care to intermediate nursing care, do not comply with federal regulations, that the hearing examiner's decision was not supported by substantial evidence, and that the Secretary of the DPW abused his discretion in denying the petition for reconsideration.[6]

We disagree.

DPW regulations classify skilled care services as follows:

II. *Skilled Care Services*

(a) For an individual service provided to the recipient to be considered a skilled care service, the service must:

---

[6] Petitioners also contend that their equal protection and due process rights were violated, and that DPW's regulations are inconsistent with the Pennsylvania Department of Health's regulations. These contentions are without merit. DPW's creation of two levels of care mirror the federal government's creation of classes of care, and is rationally related to minimizing expenditures. In addition, Pennsylvania has named the DPW as the single state agency to administer and supervise the medicaid program pursuant to 42 U.S.C. §1396a(5) and the Public Welfare Code, Act of June 13, 1967, P.L. 31, 62 P.S. §201. The Pennsylvania Department of Health is merely in charge of licensing skilled nursing care and intermediate care facilities. 55 Pa. Code §1181.41(1).

    (i)  be needed by the patient on a daily basis;

    (ii)  be ordered by a physician;

    (iii)  require the skills of, and be provided either directly by or under the supervision of medical professionals;

    (iv)  be provided to the patient on a daily basis;

    (v)  be one that can only be provided, as a practical matter, in a skilled nursing facility on an inpatient basis;

    (vi)  be documented in the recipient's medical record daily; and

    (vii)  be included and not excluded as a skilled care service in the *Skilled Nursing Care Assessment Handbook.*

55 Pa. Code §1181, Appendix EII(a).

Skilled care services are further broken down into two categories, skilled nursing services and skilled rehabilitative services.[7] If a patient does not need or receive a skilled care service specified in the categories of skilled nursing and skilled rehabilitative services, he may still qualify for skilled care service under the following conditions:

> [I]n rare instances, a particular medical condition may occur which complicates the recipient's medical state to the degree that the treatment of the recipient's medical condition must be rendered or supervised by medical professionals on a daily basis. Although any of the services required in the treatment of this con-

---

[7] Examples included in skilled nursing and rehabilitative services are: intravenous, intramuscular or subcutaneous injections and hypodermocylsis or intravenous feedings, Levin tube and gastrostomy feedings, therapeutic exercises or activities, gait evaluation and training. The remainder of the services are enumerated at 55 Pa. Code §1181, Appendix EII(b)(i) and (ii).

dition could be performed by a properly instructed person, that person would not have the ability to understand the relationship between the services and to evaluate the ultimate effect of one service or the other. . . . It is the necessity of the immediate involvement of medical professionals in the treatment of the recipient's special medical condition that qualifies the recipient to be determined medically eligible for skilled nursing care. . . .

55 Pa. Code §1181, Appendix EII(c).

The analogous federal regulations can be found at 42 C.F.R. §§409.31-409.36. After carefully reading the federal and state regulations, we have come to the conclusion that they are consistent with each other. However, petitioners maintain that the federal regulations would allow them to qualify for skilled care services under 42 C.F.R. §409.33(a). Section 409.33(a) provides in relevant part:

*Services that could qualify as either skilled nursing or skilled rehabilitation services—(1) Overall management and evaluation of care plan.* The development, management, and evaluation of a patient care plan based on the physician's order constitute skilled services when, because of the patient's physical or mental condition, those activities require the involvement of technical or professional personnel in order to meet the patient's needs, promote recovery, and ensure medical safety. This would include the management of a plan involving only a variety of personal care services when, in light of the patient's condition, the aggregate of those services requires the involvement of technical or professional personnel. . . . Although any of the required services could be performed by a properly instructed person, such a person would

not have the ability to understand the relationship between the services and evaluate the ultimate effect of one service on the other. . . . Under these circumstances, the management of the plan of care would require the skills of a nurse even though the individual services are not skilled. . . . Therefore, if the patient's overall condition would support a finding that recovery and safety can be assured only if the total care is planned, managed and evaluated by technical or professional personnel, it would be appropriate to infer that skilled services are being provided.

Since the DPW regulations do not mention that the "aggregate of personal care services" could qualify one for skilled care services as the federal regulations do, petitioners contend that they would qualify for skilled service under the federal regulations, while they would not qualify under state regulations. Although 42 C.F.R. §409.33(a) is not followed verbatim in the DPW regulations, the analogous State version of the "catchall" federal regulation is 55 Pa. Code §1181, Appendix EII(c). Since there is a comparable State regulation, petitioners would not qualify under either regulation.

Petitioners range in age from 72 to 101 and suffer a variety of illnesses associated with the geriatric process. They receive personal care services that include the administration of oral medications, ointments, maintenance of catheters, skin care and dressings. Even though petitioners were receiving a number of personal care services, the hearing examiner found that these services did not warrant petitioners being classified for skilled care services. Furthermore, the HHS expressed its view that the DPW regulations were in compliance with applicable federal regulations. *See Michael Reese Physicians & Sur-*

*geons, S.C. v. Quern*, 606 F.2d 732 (7th Cir. 1979), *cert. denied*, 449 U.S. 1079 (1981). In *Montgomery County Geriatric and Rehabilitation Center v. Department of Public Welfare*, 75 Pa. Commonwealth Ct. 248, 254, 462 A.2d 325, 329 (1983), our Court stated: "We must accord an administrative agency's interpretation of its own regulations controlling weight, unless (1) that interpretation is plainly erroneous or inconsistent with the regulations or (2) unless the regulations are inconsistent with the underlying legislative scheme." (Citations omitted.)

The hearing examiner's interpretation was not clearly erroneous or inconsistent with the regulations, nor are the DPW regulations inconsistent with the underlying legislative scheme.[8]

Petitioners also contend that the hearing examiner's decision was not supported by substantial evidence and that the Secretary of the DPW abused his discretion in denying the petition for reconsideration.

Our scope of review of orders of the DPW is limited to a determination of whether or not the adjudication was in accordance with the law, whether or not any constitutional rights were violated, and whether or not the findings of fact were supported by substantial evidence. *Klingerman Nursing Center, Inc. v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 470, 458 A.2d 653 (1983). The hearing examiner had review and assessment forms for each petitioner. In addition, members of the DPW Inspection of Care Team testified as to petitioners' conditions. This

---

[8] This Court realizes that aggregate personal care services could qualify a patient for skilled care services if his medical condition warrants the services of medical professionals; however, in the matter sub judice, this was not the case. Any properly instructed person could have administered the services petitioners were receiving.

surely was substantial evidence to support the findings of fact. Since the findings were supported by substantial evidence, the Secretary of the DPW did not abuse his discretion in denying a petition for reconsideration.[9]

For the reasons stated above we affirm the order of the DPW.

ORDER

AND Now, April 26, 1985, the final order of the Department of Public Welfare, dated September 1, 1983, in the above-captioned matter is hereby affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[9] Petitioners also contend that the hearing examiner's decision was wrongfully based on the condition of petitioners at the time the Inspection of Care Team made the review. They are alleging that their conditions changed for the worse subsequent to the review; therefore, their levels of care should have increased. The fact that petitioners' conditions could have changed subsequent to the review and until the hearing date does not affect this action. We are not fact finders and cannot determine the level of care petitioners should receive; therefore, we had reviewed the record and considered the conditions of petitioners as of the date the Inspection of Care Team visited the nursing home. The proper administrative procedure would have been to file for a review of classification, based upon the change in the patient's condition, such that a proper administrative hearing could be held.