Fifty Residents of Park Pleasant Nursing Home, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 10, 1985, before Judges ROGERS and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

, *Samuel Kagle*, with him, *Niles Schore*, for petitioners.

*Mary Frances Grabowski*, Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, January 30, 1986:

This is the appeal of fifty nursing home residents of the Park Pleasant Nursing Home (residents) who have been receiving skilled nursing care under the Medical Assistance Program.[1]  Following an annual

___

[1] Title XIX of the Social Security Act (Medicaid), 42 U.S.C. §§1396-1396p.  The Medicaid program is a cooperative federal-state arrangement; and states such as Pennsylvania which choose to participate must comply with the requirements of the Social Security Act and regulations promulgated thereunder.

inspection, the Pennsylvania Department of Public Welfare's (DPW) Inspection of Care team recommended that the care of the appellant residents be reclassified from skilled to intermediate. DPW sent notices to the residents recertifying them in accordance with the recommendation. The residents appealed this determination, and two days of hearings were held at which the hearing officer upheld DPW's recommendations. The hearing officer's decision was affirmed by DPW's Office of Hearings and Appeals. The residents filed a request for reconsideration which was denied by DPW's Executive Deputy Secretary. The residents have filed a petition for review of the order of recertification, asking us to remand their cases for reevaluation because, as they assert, DPW's procedures were contrary to law and its own regulations.

The residents first claim that the DPW regulations which formed the basis for the reduction in the level of care to them must be invalidated since "[these] regulations examine only the treatment and services provided in determining whether care is skilled or not." The DPW regulations classify skilled care services as follows:

 *II. Skilled Care Services.*

 (a) For an individual service provided to the recipient to be considered a skilled care service, the service must:

 (i) Be needed by the patient on a daily basis.

 (ii) Be ordered by a physician.

 (iii) Require the skills of, and be provided either directly by or under the supervision of, medical professionals.

 (iv) Be provided to the patient on a daily basis.

(v) Be one that can only be provided, as a practical matter, in a skilled nursing facility on an inpatient basis.

(vi) Be documented in the recipient's medical record daily.

(vii) Be included and not excluded as a skilled care service in the Skilled Nursing Care Assessment Handbook.

55 Pa. Code §1181, Appendix E II(a). The residents claim that these criteria do not allow for an analysis of the patient's condition as a whole, which has been found to be necessary by those courts interpreting a similar provision defining "skilled nursing facility services" in the Social Security Act, which states in pertinent part:

[T]he term 'skilled nursing facility services' means services which are or were required to be given an individual who needs or needed on a daily basis skilled nursing care (provided directly by or requiring the supervision of skilled nursing personnel) . . . which can only as practical matter be provided in a skilled nursing facility on an inpatient basis.

42 U.S.C. §1396d(f). As a result, the residents claim that the DPW regulations are not in compliance with the Social Security Act. We find this argument to be without merit.

If a patient does not need or receive one of the listed services in the above-cited DPW regulation, he may still qualify for skilled care service under the following conditions:

A recipient may not need or receive a skilled care service . . . however, in rare instances, a particular medical condition may occur which contemplates the recipient's medical state to the degree that the treatment of the recipient's medical condition must be rendered or super-

vised by medical professionals on a daily basis. Although any of the services required in the treatment of this condition could be performed by a properly instructed person, that person would not have the ability to understand the relationship between the services and to evaluate the ultimate effect of one service on the other. Therefore, the treatment of the medical condition requires that the services be performed by or under the immediate supervision of medical professionals. It is the necessity of the immediate involvement of medical professionals in the treatment of the recipient's special medical condition that qualifies the recipient to be determined medically eligible for skilled nursing care. 55 Pa. Code §1181, Appendix EII(c).

From this provision it is evident that a person who does not qualify for skilled nursing facility services as expressly defined in the regulations may nevertheless be medically eligible for skilled nursing care if a particular medical condition exists. This provision allows the DPW to look beyond the services actually provided and assess the complete condition of the patient. Examples of instances in which an individual could be determined eligible for skilled nursing care due to special medical complications are contained in a DPW handbook entitled Medical Assistance Handbook. Eligibility determinations are made on a case by case basis, based on the following criteria: age of the patient, overall medical condition of the patient, diagnosis and presenting signs and symptoms, length of hospital stay, medications, and services and treatment needs. We find that DPW does consider, in accordance with the interpretations of analogous provisions of the Social Security Act, the patient's overall condition when making level of care recommendations.

The residents next claim that the DPW regulations at 55 Pa. Code §1181, Appendix E, do not comply with the corresponding federal regulations found at 42 C.F.R. §§409.32-409.36. We are controlled on this point by our recent decision in *Barnett v. Commonwealth of Pennsylvania, Department of Public Welfare*, 89 Pa. Commonwealth Ct. 16, 491 A.2d 320 (1985), where we held:

> After carefully reading the federal and state regulations, we have come to the conclusion that they are consistent with each other.
>
> . . . .
>
> Since the DPW regulations do not mention that the 'aggregate of personal care services' could qualify for skilled care services as the federal regulations do, petitioners contend that they would qualify for skilled service under the federal regulations, while they would not qualify under state regulations. Although 42 C.F.R. §409.33(a) is not followed verbatim in the DPW regulations, the analogous version of the 'catch-all' federal regulations is 55 Pa. Code §1181, Appendix EII(c). Since there is a comparable State regulation, petitioners would not qualify under either regulation.

The residents next claim that the DPW Inspection of Care (IOC) procedures are inadequate under federal regulations. The federal regulations regarding IOC reviews are contained at 42 C.F.R. §§456.600-456.614.

> The team must determine in its inspection whether—
>
> (a) The services available in the facility are adequate to—
>
> (1) Meet the health needs of each recipient, and the rehabilitative and social needs of each recipient in an [intermediate care facility]; and

(2) Promote his maximum physical, mental, and psychosocial functioning.

(b) It is necessary to meet the recipient's health needs. . . .

42 C.F.R. §456.609.

In making the determination on adequacy of services and related matters under §456.609 for each recipient, the team may consider such items as whether—

(a) The medical evaluation, any required social and psychological evaluations, and the plan of care are complete and current; the plan of care . . . [is] followed; and all ordered services, including dietary orders, are provided and properly recorded;

(b) The attending physician reviews prescribed medications—

. . . .

(e) The recipient receives adequate services, based on such observations as—

(1) Cleanliness

(2) Absence of bedsores

(3) Absence of signs of malnutrition or dehydration; and

(4) Apparent maintenance of maximum physical, mental, and psychosocial function;

. . . .

(g) The recipient needs any service that is not furnished by the facility or through arrangements with others, and

(h) The recipient needs continued placement in the facility or there is an appropriate plan to transfer the recipient to an alternate method of care.

42 C.F.R. §456.610.

The DPW IOC regulations provide in pertinent part:

The team will determine in its inspection whether:

(1) The services are available and adequate to meet the recipient's health needs.

(2) It is medically necessary and desirable for the recipient to remain in the facility.

(3) Recipients receiving skilled care meet the minimum medical requirements for skilled nursing care specified in §1181.53(b)(2). . . .

(4) It is feasible for the facility to meet the recipient's health needs. . . .

. . . .

(6) The medical evaluation . . . and the plan of care are complete and current. . . .

(7) The recipient receives adequate services based on personal observations. . . .

. . . .

(9) Service needs are met by the facility or by outside arrangements.

(10) Recipient needs continued placement in the facility or there is an alternate plan to transfer to an alternate level of care.

55 Pa. Code §1181.83(b).

In addition to making the above determinations, the DPW IOC team has personal contact with and observation of each recipient in a skilled nursing facility and reviews each recipient's medical record.

It is evident that under both the federal and state regulations, the IOC team must examine the present services available to the resident, whether it is necessary for the resident to remain at his present facility, and whether the general health needs of the resident are being met. We fail to perceive any discernible difference between the two sets of regulations and therefore we find that the DPW IOC procedural regulations are in conformance with the federal regulations.

The residents next argue that the notices sent to them regarding the reclassification of their level of care were inadequate under federal and state regulations.[2] The notices to each resident read as follows:

Your continued need for Nursing Home Care had (sic) been reviewed by the Department's Inspection of Care Team on          . We have been notified by the Harrisburg Inspection of Care Team that they have recommended your level of care, medical certification be transferred from *Skilled* to *Intermediate*. Effective          you have been recertified for *Intermediate* Care. This is in accordance with manual Section 1181.83; 1181.54(c); 1181.54(d).

Federal regulations controlling state distribution of Medicaid payments require that notice of an adverse action with respect to any recipient must contain:

(a)  A statement of what action the agency intends to take;

(b)  The reasons for the intended action;

(c)  The specific regulations that support . . . the action; and

(d)  An explanation of . . . the individual's right to request an evidentiary hearing if one is available, or a State agency hearing. . . .

42 C.F.R. §431.210.

The corresponding state regulation reads as follows:

(ii)  The notice (Form PA 612-C or Form PA 162-A) must contain the following:

---

[2] DPW has responded that the residents did not raise the question of the substantive adequacy of the notices before the agency. In each of their briefs filed below the residents asserted that they had been denied procedural due process. Proper notice of the reasons for an administrative action affecting a property right is an element of procedural due process. We believe that the question was sufficiently raised below.

(A)  A statement of the action taken or to be taken and the effective date.

. . . .

(B)  The reasons for the action, including all the facts on which the action is based in as much detail as possible.

(C)  A statement of the information needed to establish continued eligibility when applicable.

(D)  A citation and a brief explanation of regulations used as the basis for the action.

(iii)  These notices shall be completed in simple, nontechnical terms and sufficient in detail so that the basis for the action is understandable to the client. 'Officialese,' use of abbreviations, and reference to form numbers are avoided. It is expected that whenever possible an oral explanation will have been given to the client before he receives the written notice.

55 Pa. Code §133.4(b)(4).

The notices sent by DPW to the residents lacked many of the requirements set forth in both the federal and state regulations. No reasons were given for the intended reduction in each resident's level of care. No specific regulations supporting the recommendations were cited. The manual sections listed in the notice concern inspection of care procedures, not the definitions of skilled care which were relied upon in making the recommendations. The notice is devoid of detail and contains no explanation of the basis for the action. We find that the notices of the recommended reduction in the residents' level of care were inadequate under both the federal and state regulations.

Order of September 13, 1984 is reversed without prejudice to the right of DPW to commence new pro-

ceedings upon notice to the residents conforming to the federal and state regulations.

### Order

And Now, this 30th day of January, 1986, the order of September 13, 1984 is reversed without prejudice to the right of the Department of Public Welfare to commence new proceedings upon notice to the residents conforming to the federal and state regulations.