565 A.2d 226

**In re James DeYOUNG.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPART-MENT OF PUBLIC WELFARE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1989.

Decided Oct. 26, 1989.

Reargument Denied Jan. 2, 1990.

Howard Ulan, Asst. Counsel, for appellant.

Frank Robert Cori, Asst. County Sol., for appellee, Schuylkill County.

Alfred W. Crump, Jr., Asst. County Sol., for appellee, Berks County.

Before CRAIG and DOYLE, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Commonwealth of Pennsylvania, Department of Public Welfare (Commonwealth) appeals from an order of the Court of Common Pleas of Berks County determining that, because of an inability to determine the residence of James DeYoung, currently an inpatient at Norristown State Hospital (Norristown), as being a county within the Commonwealth, liability for Mr. DeYoung's treatment should be borne by the Commonwealth pursuant to Section 408 of the Mental Health Procedures Act (Act).[1]

Mr. DeYoung apparently has a substantial history of mental illness and commitments to state mental hospitals. In 1985, he pled guilty in a Berks County court to involuntary manslaughter for an offense committed in Berks County in 1983. He was committed to involuntary treatment at Norristown, where he apparently remains. Pursuant to

[1] Act of July 9, 1976, P.L. 817, added by the Act of November 26, 1978, P.L. 1362, *as amended,* 50 P.S. § 7408.

Section 408 of the Act, Schuylkill County was assessed the costs of Mr. DeYoung's treatment.

In 1987, a petition to determine legal residence was filed by Schuylkill County with the Court of Common Pleas of Berks County, asserting that Mr. DeYoung was domiciled in Berks County. A hearing was scheduled on the petition and both Schuylkill and Berks Counties appeared and were represented. The Commonwealth, which had notice of the proceeding, elected not to appear.

Schuylkill County presented the testimony of Jay R. Zeigler, a Schuylkill County detective, who testified that he was unable to discover a Schuylkill County address for Mr. DeYoung. The only information he was able to find indicated that Mr. DeYoung may have stayed at the Hotel Davis, a transient hotel in Pottsville, Schuylkill County. The hotel, however, maintained no records and he was unable to verify that information. Berks County presented no evidence.

The trial court decided that it could not determine Mr. DeYoung's residence and it entered an order assessing the costs of his treatment against the Commonwealth. The Commonwealth has appealed from that order, raising two issues for our review: 1) whether Section 408 of the Act provides for payment by the Commonwealth only in the case of a person whose residence is outside the Commonwealth and, 2) whether the trial court erred in failing to make a determination of residence on the basis of the evidence before it.

Section 408 of the Act provides as follows:

The Commonwealth shall pay for the costs, payments or expenditures in excess of $120 per day made on behalf of any person who is a resident of a county located within the Commonwealth and who receives treatment and for whom liability is imposed on the county pursuant to Section 505(a) of the Act of October 20, 1966 (3d Sp. Sess., P.L. 96, No. 6), known as the 'Mental Health and Mental Retardation Act of 1966.' All costs up to and including $120 per day shall be imposed upon the county of his

residence. In the event that a residency cannot be determined to be *in a county within the Commonwealth* by the court that convicted or sentenced the person, all liability for treatment imposed by section 505(a) of the 'Mental Health and Mental Retardation Act of 1966' shall be borne by the Commonwealth. (Emphasis added.)

The Commonwealth argues that the emphasized portion of the above-quoted language must be read to mean that the Commonwealth will be responsible for payment for persons whose residence is determined to be outside the Commonwealth. It arrives at this conclusion by comparing Section 505(a) of the Mental Health and Mental Retardation Act of 1966 (Mental Health Act)[2] with Section 408 of the Act, relying on 1 Pa.C.S. § 1921(c)(5) which allows for reference to former law as an aid to interpreting legislative intent.[3]

Section 505(a) of the Mental Health Act imposes liability for the cost of confinement of a person under conviction or sentence in a mental health facility upon the county of conviction, which would necessarily be a county within Pennsylvania. By shifting this liability to the county of residence of the person, the Commonwealth argues that the disputed language of Section 408 of the Act was inserted to cover payment in the case of out-of-state residents convicted of crimes in Pennsylvania.

█ While the Commonwealth's interpretation is certainly plausible, it asks us to re-write the phrase at issue by deleting the words "in a county." Were the phrase to read "[if] residency cannot be determined to be *within the Commonwealth*," it would unambiguously support the Commonwealth's argument. However, it is not our task to re-write legislation, but to interpret the words the legislature chose

---

**2.** Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended,* 50 P.S. § 4505(a).

**3.** Although the Commonwealth refers to Section 505(a) of the Mental Health Act as "prior law," we note that that section has not been specifically repealed. It is, however, inconsistent with the terms of Section 408 of the Act, which, as the later of the two to have been enacted, would prevail. *See* 1 Pa.C.S. § 1936.

to use.  Whenever possible, each word of a statutory section is to be given effect and not to be treated as surplusage.  *See, e.g., Matter of Employees of Student Services,* 495 Pa. 42, 432 A.2d 189 (1981); 1 Pa.C.S. § 1921(a).

■ The interpretation which would accomplish that task embraces both the situation posited by the Commonwealth (an out-of-state resident) and that faced by the trial court (a transient for whom no residence can be determined).  While it is likely that the legislature intended to impose liability upon the Commonwealth for out-of-state residents, it is equally probable that it intended to impose such liability for transient individuals.  Accordingly, we conclude that the trial court did not err in choosing this interpretation, which gives full effect to the statutory language.

■ The Commonwealth's second argument is that the court was *required* to select either Schuylkill or Berks County as Mr. DeYoung's residence, because the only evidence before it pointed to one of those two counties.  In *Department of Public Welfare v. Kallinger,* 66 Pa.Commonwealth Ct. 198, 203–04, 443 A.2d 1219, 1221 (1982), we held that the term "residence" as used in Section 408 of the Act means domicile, which we defined as " 'the place where [a person] has *voluntarily* fixed his habitation with a present intention to make it either his permanent home or his home for an indefinite future.' " (Citation omitted.)

Here, there simply was no evidence to indicate the place where Mr. DeYoung had voluntarily fixed his habitation. On the basis of the record before the trial court, we must agree that Mr. DeYoung's residence simply could not be determined.

Although we recognize that our holding entails the potential for abuse by counties which would choose not to do a full investigation to determine a person's residence, we consider the possibility slight, given two factors.  First, petitions to determine residence are adversarial proceedings and the counties involved will normally have an interest in proving residence, where possible.  In addition, we held in

*Kallinger* that the Commonwealth is necessarily an interested party when residence is to be determined under Section 408. As such, it too would be afforded the opportunity to furnish proof of residence for an in-state individual.

In the case before us, the Commonwealth was notified of the petition and the scheduled hearing date. It elected not to appear because it determined that its interests would not be affected. By this erroneous decision, the Commonwealth deprived itself of an opportunity to establish the locus of Mr. DeYoung's residence.

For these reasons, we will affirm the trial court's order.

## ORDER

AND NOW, this 26th day of October, 1989, the order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby affirmed.