**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE**

v.

**LUBRIZOL CORPORATION EMPLOYEE BENEFITS PLAN, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 17, 1999.
Decided Sept. 15, 1999.

**864**

Judith F. Olson, Pittsburgh, for appellant.

Jason W. Manne, Pittsburgh, for appellee.

Before McGINLEY, J., KELLEY, J., and RODGERS, Senior Judge.

KELLEY, Judge.

Lubrizol Corporation Employee Benefits Plan (the Plan) appeals from an order of the Court of Common Pleas of Allegheny County (state court) which denied the Plan's motion for judgment on the pleadings. We affirm.

The facts of this case are as follows. The Plan provides health care benefits to retirees of the Lubrizol Corporation and their dependents. Francis L. was a retiree of the Lubrizol Corporation and member of the Plan. Francis, who suffered from dementia, was hospitalized at Warren State Hospital, a state facility, from September 17, 1991 to May 10, 1993. Thereafter, he was transferred to Pleasant Ridge Manor, a nursing facility, where he resided until his death on August 17, 1994. The

Medicaid program paid for Francis' care at both institutions.

The Department of Public Welfare (DPW),[1] as assignee of Medicaid recipients, submitted claims to the Plan to recover the costs of Francis' care at Warren State Hospital and Pleasant Ridge Manor. The Plan denied DPW's claims. For the period prior to January 1, 1993, the Plan denied DPW's claim because of an exclusion for custodial care under the Plan's terms.[2] For the period subsequent to January 1, 1993, the Plan denied DPW's claims based upon a broader exclusionary provision for custodial care which was adopted January 1, 1993.

In 1992, DPW commenced an action in the United States District Court for the Western District (federal court) against the Plan seeking to recover Medicaid expenditures for Francis' care at Warren State Hospital. DPW voluntarily withdrew the federal complaint and refiled with the state court. The Plan then removed the case to federal court. DPW filed a motion to remand the case to the state court on the ground that its complaint did not raise any federal questions. By order and opinion dated May 26, 1998, the federal court granted DPW's motion and remanded the matter to the state court.

Upon remand, DPW filed, with the state court, a first amended complaint on July 16, 1998 seeking to recover Medicaid expenditures for Francis' care at Warren

State Hospital and Pleasant Ridge Manor and challenging the legality of the adoption process of the January 1, 1993 amendment. Following the close of the pleadings, the Plan filed a motion for judgment on the pleadings on the grounds that DPW's first amended complaint is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and that the state court lacks jurisdiction to decide any of the claims raised in DPW's complaint. By interlocutory order dated February 10, 1999, the state court denied the Plan's motion. The Plan filed a petition for permission to appeal with this Court pursuant to Pa. R.A.P. 312,[3] which was granted by order dated April 26, 1999.[4] The Plan has raised the following issues for our review:

I.   Did the state court err in denying the Plan's motion for judgment on the pleadings since the claims asserted in DPW's first amended complaint arise under and are governed exclusively by ERISA?.

II.  Did the state court err in denying the Plan's motion for judgment on the pleadings since ERISA preempts any state law which may govern the claims for benefits from an ERISA-governed employee benefit plan?

III. Did the state court err in applying Sections 1404(b) and 1409(a)(3) of the Public Welfare Code[5] to DPW's claims?

---

1.   DPW is the state agency which administers and supervises the Medicaid program under Title XIX of the Social Security Act. Section 201 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 201.

2.   The exclusion relating to custodial care relied upon by the Plan existed within the Plan's definition of a "hospital" which excluded certain institutions which provided custodial care.

3.   Rule 312 provides: "An appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)."

4.   This Court's scope of review of a trial court's decision to grant or deny a motion for

judgment on the pleadings is limited to determining whether the trial court committed an error of law or abused its discretion. *Ithier v. City of Philadelphia*, 137 Pa.Cmwlth. 103, 585 A.2d 564 (1991). The opposing party's well-pled allegations are viewed as true, but only those facts specifically admitted by the opposing party may be considered against him. *Id.* The motion may only be granted where no material facts are at issue and the law is clear that a trial would be a fruitless exercise. *Id.*

5.   62 P.S. §§ 1404(b), 1409(a)(3). · Sections 1404 and 1409 were added by the Act of July 10, 1980, P.L. 493.

IV. Did the state court err in denying the Plan's motion for judgment on the pleadings on the basis that exclusive jurisdiction over DPW's claims rests in the federal courts and, therefore, the state court lacks jurisdiction to decide this matter?

## I.

First, the Plan contends that the state court erred in denying the Plan's motion for judgment on the pleadings as the claims asserted in DPW's first amended complaint arise under and are governed exclusively by federal law, not state law. We disagree.

Section 502 of ERISA deals with the civil enforcement of the ERISA statute. This section provides that a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). This section further provides that a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

The Plan contends that DPW's claims fall squarely within ERISA's civil enforcement provisions for two reasons. First, DPW claims that the Plan wrongly denied DPW benefits under the terms of the Plan, an action described in Section 502(a)(1)(B). Second, DPW claims that the Plan illegally adopted the January 1, 1993 amendment, an action which is equitable in nature and contained within Section 502(a)(3). While DPW's claims do appear to fall within the scope of ERISA's civil enforcement provisions, a problem arises with regard to whether DPW is permitted to bring an action under ERISA.

■ In order for a party to bring an action under ERISA as described above, a party must qualify as a participant, beneficiary or fiduciary. A *participant* is defined under ERISA as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." Section 3(7) of ERISA, 29 U.S.C. § 1002(7). A *beneficiary* is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Section 3(8) of ERISA, 29 U.S.C. § 1002(8). A *fiduciary* is defined as "a person ... (i)[who] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii)[who] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii)[who] has any discretionary authority or discretionary responsibility in the administration of such plan." Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). A "person," as used within the definitions of beneficiary or fiduciary, is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." Section 3(9) of ERISA, 29 U.S.C. § 1002(9).

■ DPW is a governmental agency and an assignee of Francis' rights. Unfortunately, neither governmental agencies nor assignees are included among the enumerated list of parties empowered to bring

an action pursuant to ERISA's civil enforcement provisions. First, DPW does not qualify as a participant as DPW is not an employee or former employee of the Plan. Second, although it appears that DPW could fall within the definition of beneficiary or fiduciary, an examination of the term "person" as defined by ERISA precludes such an interpretation.[6] *See Northeast Department ILGWU v. Teamsters Local Union No. 229,* 764 F.2d 147, 154 n. 6 (3 rd Cir.1985) ("Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf."); *Department of Public Welfare v. Quaker Medical Care & Survivors Plan,* 836 F.Supp. 314, 318 (W.D.Pa.1993); *Allergy Diagnostics Laboratory v. Equitable,* 785 F.Supp. 523, 527 (W.D.Pa.1991). As DPW is not a participant, beneficiary or fiduciary, DPW's claims fall outside the scope of ERISA's civil enforcement provision.[7]

## II.

The Plan contends that the state court erred in denying the Plan's motion for judgment on the pleadings since ERISA preempts any state law which may govern the claims for benefits from an ERISA-governed employee benefit plan. We disagree.

ERISA was designed to protect the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90,

103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA's comprehensive regulatory scheme was intended to establish the regulation of benefit plans as "exclusively a federal concern." *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In order to maintain federal control over benefit plan regulation, ERISA contains a "very broad preemption clause." *Hydrostorage, Inc. v. Northern California Boilermakers,* 891 F.2d 719, 726 (9th Cir.1989), *cert. denied,* 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990). This preemption clause, contained in Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides:

> "[e]xcept as provided in subsection (b) ..., the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)]."

ERISA's broad preemption of state laws, however, is qualified by subsection (b). Of import to our discussion is subsection (b)(8), which protects certain state causes of action relating to state Medicaid programs. This section, as amended in 1993, provides:

> Subsection (a) shall not be construed to preclude any State cause of action—
>
>> (A) with respect to which the State exercises its acquired rights under section 609(b)(3) [29 U.S.C.A.

6. Unfortunately, no legislative history is determinative with respect to whether Congress intended Section 502 of ERISA to be an exclusive grant of jurisdiction. It is clear, however, that when Congress intended to provide a civil action for a State with respect to pension plans it clearly did so. For instance, Section 502(a)(7) of ERISA, 29 U.S.C. § 1132(a)(7), provides that a civil action may be brought "by a State to enforce compliance with a qualified medical child support order...." Congress' failure to specifically mention the term "assignee" or "State" in Section 502 or within the definitions of participant, beneficiary or fiduciary must, there-

fore, be construed as meaning that Congress intended to exclude state governments from the provisions of that section.

7. The Third Circuit has approved a similar result with respect to actions by an employer to recover excess contributions. *Crown Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia,* 549 F.Supp. 307, 311 (E.D.Pa. 1982), *aff'd,* 720 F.2d 661 (3d Cir.1983) (Section 502 "clearly restricts the categories of individuals empowered to bring a civil action ..., none of which includes employers.").

§ 1169(b)(3) ][8] with respect to a group health plan (as defined in section 607(1) [29 U.S.C.A. § 1167(1) ] ), or

(B) for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.] which would not have been payable if such acquired rights had been executed before payment with respect to such items or services by the group health plan.

Section 514(b)(8) of ERISA, 29 U.S.C. § 1144(a) (effective August 10, 1993).[9]

Both parties seem to agree that prior to the 1993 amendments, DPW could not have sued the Plan in federal court. Both parties also agree that as a result of the 1993 amendments, DPW may bring a lawsuit against the Plan to recoup Medicaid benefits provided to a participant. The dispute, however, is over whether the claims raised in DPW's first amended complaint must be pursued in federal court or whether DPW may pursue these claims under state law in state court.

The Plan contends that DPW must pursue these claims in federal court. The Plan asserts that Section 514(b)(8) merely permits states to pass legislation permitting them to become an assignee; once an assignee, the state must follow the same procedures and the same causes of action as the participant under ERISA. This argument, while persuasive, is not without

its flaws. First, as aptly explained in the opinion issued by the federal court in this matter, the 1993 amendments did not expand Section 502(a) to allow a governmental body as an assignee to sue in federal court, but simply lifted the preemption for certain State causes of action. Second, the Plan's interpretation would have the effect of rendering the word "State" within the clause "State cause of action" meaningless.[10]

■ The more persuasive interpretation is that Section 514(b)(8) of ERISA lifts preemption for "any State cause of action" with respect to which a state Medicaid program is exercising (as an assignee or subrogee) the rights of a participant of the benefit plan. *See Belshe v. Laborers Health and Welfare Trust Fund for Northern California,* 876 F.Supp. 216 (N.D.Cal.1994). In other words, Section 514(b)(8), as amended, permits a governmental body in a state court action to obtain reimbursement for those benefits to which a participant was entitled under the Plan.

■ We note, however, that Section 514(b)(8) protects state laws and state causes of action only to the extent that the state is enforcing its acquisition of the rights of the beneficiary. As a result, this section cannot serve to preclude from preemption a state law or state cause of action that seeks to enforce additional rights the state has attempted to acquire by statute rather than by assignment[11] or subroga-

---

**8.** This section pertains to the acquisition by States of rights of third parties.

**9.** The original version of Section 514(b)(8) of ERISA (effective October 1, 1986) provided:
Subsection (a) of this section shall not apply to any State law mandating that an employee benefit plan not include any provision which has the effect of limiting or excluding coverage or payment for any health care for an individual who would otherwise be covered or entitled to benefits or services under the terms of the employee benefit plan, because that individual is provided, or is eligible for, benefits or services pursuant to a plan under title XIX of the

Social Security Act [42 U.S.C.A. § 1396 et seq.], to the extent such law is necessary for the State to be eligible to receive reimbursement under title XIX of that Act.

**10.** It is a fundamental principle of statutory construction that words in a statute should be given full effect and not be treated as mere surplusage. *In re DeYoung,* 129 Pa.Cmwlth. 265, 565 A.2d 226 (1989).

**11.** *See* 3 P.L.E. Assignments § 72 at 197 (The rights of an assignee rise no higher than those of his assignor.).

tion.[12] *See Belshe* (state law which expanded the statute of limitations period was not protected from preemption as it created greater rights than by subrogation).

### III.

The Plan contends that the state court erred in applying Sections 1404(b) and 1409(a)(3) of the Public Welfare Code to DPW's claims. We agree in part.

■ Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., establishes the medical assistance program known generally as "Medicaid." Medicaid is a cooperative federal-state program which provides payment for medical services to eligible individuals and families. 42 U.S.C. § 1396. If a state elects to participate in the program, the costs of Medicaid are shared by the federal government. *See* 42 U.S.C. § 1396a(a)(2); *Northwood Nursing & Convalescent Home, Inc. v. Commonwealth*, 523 Pa. 483, 567 A.2d 1385 (1989). In return, participating States must comply with requirements imposed by the Social Security Act and regulations promulgated thereunder. *Atkins v. Rivera*, 477 U.S. 154, 156–57, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986) (citations omitted); *Fifty Residents of Park Pleasant Nursing Home v. Department of Public Welfare*, 94 Pa.Cmwlth. 491, 503 A.2d 1057 (1986). A participating state must submit a "State plan for medical assistance" to the Secretary and obtain approval of the plan. 42 U.S.C. § 1396. The federal statute sets forth in considerable detail certain mandatory features of any acceptable State plan. Pertinent to the present controversy, a State plan must provide:

> (A) that the State ... will take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan, including—

....

> (ii) the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against third parties ... [and]

....

> (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State ... will seek reimbursement for such assistance to the extent of such legal liability,
> ...

42 U.S.C. § 1396a(a)(25). Additionally, State plans must require individuals who receive benefits "to assign the State any rights ... to support ... and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). *See also* 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(B). Regulations of the Department of Health and Human Services further specify a participating State's obligations. *See* 42 C.F.R. §§ 433.135–433.153.

Pennsylvania is a participating state. In accordance with Title XIX of the Social Security Act, Pennsylvania has implemented the above requirements into state law through the enactment of the Public Welfare Code. The sections of the Public Welfare Code at issue herein are Sections 1404 and 1409.

Section 1404(b) of the Public Welfare Code, 62 P.S. § 1404(b), provides that the "acceptance of medical assistance benefits shall operate as an assignment to the department, by operation of law, of the assistance recipient's rights to recover support, specified by a court as support for the payment of medical care, and to payment for medical care from any third party."

---

12. See 35 P.L.E. Subrogation § 6 at 260–261 (Generally, a subrogee is placed in the precise position of the one whose rights he is subro- gated. Subrogated rights may rise as high as, though no higher than their source.).

Section 1409(a)(3) of the Public Welfare Code provides that "[e]ach publicly funded health care program that furnishes or pays for health care services to a recipient having private health care coverage shall be entitled to be subrogated to the rights that such person has against the insurer of such coverage to the extent of the health care services rendered."

■ In determining whether or not the state court erred in applying these sections to DPW's claims, we find it necessary to first determine whether DPW has presented a "cause of action" with respect to these sections. An examination of DPW's first amended complaint reveals that DPW has failed to specifically identify the legal theory for the relief requested. In the complaint, DPW does allege that it is "assigned Francis L.'s rights to recover against [the Plan]" and "owns and operates Warren State Hospital." DPW, however, does not allege that it is a "subrogee" of Francis' rights. We, therefore conclude that the state court erred in applying Section 1409 to DPW's claims.

■ With regard to Section 1404(b), DPW has sufficiently alleged that it is an assignee of Francis' rights. Unfortunately, Section 1404, while establishing rights of assignment, does not create an independent cause of action. See Wisconsin Department of Health and Social Services v. Upholsterers International Union Health and Welfare Fund, 686 F.Supp. 708 (W.D.Wis.1988). Rather, this section merely confers upon DPW a cause of action that would have been available to Francis against the Plan.

■ The question then is whether DPW has sufficiently presented a cause of action that would have been available to Francis against the Plan. Based upon our review of DPW's first amended complaint, it appears that DPW has alleged facts sufficient to establish an action based on common law breach of contract. While a common law right to sue for breach of contract would have been preempted prior to the 1993 amendment, we conclude that such an action is now saved from preemption. See McMahan v. New England Mutual Life Insurance Co., 888 F.2d 426 (6th Cir.1989). On this basis, we conclude that DPW, as assignee of Francis' rights under Section 1404(b), has asserted a state cause of action for breach of contract.

## IV.

Lastly, the Plan contends that the state court lacks jurisdiction to decide this matter as exclusive jurisdiction over DPW's claims rests in the federal courts under the express terms of ERISA. We disagree.

■ Section 502(e) of ERISA, 29 U.S.C. § 1132(e), provides, "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title." As discussed above, DPW has not asserted an action arising under ERISA, but a "State cause of action." We, therefore, conclude that jurisdiction of this matter properly rests in the state court, not the federal court.

Accordingly, the order of the state court denying the Plan's motion for judgment on the pleadings is affirmed.

## O R D E R

AND NOW, this 15th day of September, 1999, the order of the Court of Common Pleas of Allegheny County, at Docket No. GD97–12694, dated February 10, 1999, is affirmed.