IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald Paul, by and through      :
Julia Ribaudo Senior Center,      :
                      Petitioner      :
                                  :     No. 303 C.D. 2020
           v.                  :     Submitted:  December 7, 2020
                                  :
Department of Human Services,      :
                    Respondent      :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE J. ANDREW CROMPTON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON               FILED:  January 11, 2021

Donald Paul (Resident), by and through Julia Ribaudo Senior Center (Facility) (collectively, Petitioner), petitions for review from an order of the Pennsylvania Department of Human Services' (DHS), Bureau of Hearings and Appeals (BHA), affirming the decision and order of an administrative law judge (ALJ) deeming Resident ineligible for Medicaid[2] benefits for nursing care at Facility as of a certain date.  Discerning no error below, we affirm.

---

[1] The decision in this case was reached prior to January 4, 2021, when Judge Brobson became President Judge.

[2] Title XIX of the Social Security Act (Act), 42 U.S.C. §§1396-1396p, known as Medicaid, is a cooperative federal-state program in which participating states like Pennsylvania must comply with the requirements of the Act and the regulations promulgated thereunder.

## I. Background

In 2018, at the age of 78, Resident was admitted to Facility, a long-term care (LTC) home. At the time, he suffered from chronic obstructive pulmonary disease (COPD), hypertension, and mild to moderate dementia. *See* ALJ Dec., 2/21/20, Finding of Fact (F.F.) No. 2. He was ambulatory with use of a wheelchair. Through his Medical Assistance (MA) representative, Resident filed an application for Medicaid benefits, specifically, MA/LTC benefits, on February 21, 2018, for nursing facility care. The Wayne County Assistance Office (CAO) found Resident financially eligible; however, in addition to a financial assessment, there is a level of care assessment to determine eligibility for reimbursement, which is performed by the County Area Agency on Aging (Aging). *See* 55 Pa. Code §1181.53.

The care assessment evaluates independent living skills, which include meal preparation, laundry, money management, and medication management (IADLs), as well as the activities of daily living (ADLs). ADLs include dressing, bathing, eating, toileting, shopping, telephone usage, and transportation.

Aging received the referral for a level of care assessment of Resident on April 10, 2018, and performed the requested assessment on April 18, 2018. At that time (April 2018), Resident was deemed Nursing Facility Ineligible (NFI). A notice of the assessment was sent to Resident on May 10, 2018, which he timely appealed. Reproduced Record (R.R.) at 99a.

Another assessment was performed on July 2, 2018, by the same assessor. As the findings were nearly identical, Resident was again deemed NFI. Then, on November 6, 2018, the assessor conducted a third assessment that found Resident clinically eligible due to a change in his cognitive status. As such, Resident qualified for MA/LTC benefits at that higher level of care.

On behalf of the BHA, on December 4, 2019, an ALJ held a hearing regarding the NFI determinations. The Medical Director of the Facility, Dr. Patrick Furin (Medical Director), who was also Resident's treating physician, testified on Resident's behalf. In support of the CAO, the intake caseworker (Caseworker), who performed the financial assessment, and the Assessor for Aging (Assessor), who performed the care assessments underlying the NFI determinations, testified.

Medical Director, who is board certified in geriatrics, opined as to the level of care Resident needed. He performed thousands of care assessments over his 30-year career. He had monthly appointments with Resident and saw him almost daily at the Facility, so he was familiar with Resident's condition, particularly his cognitive deficits and impaired judgment. He confirmed Resident had mild to moderate dementia, which became more apparent in longer conversations. Medical Director testified that Resident can disguise his impairment because he is able to appear high-functioning. He performed a mini-mental status test, the results of which he discussed; however, neither the testing tool nor the results were submitted to the ALJ. On cross-examination, Medical Director acknowledged that Resident could function in a personal care home (a lesser level of care), with 24-hour supervision. R.R. at 122a.

Assessor, a certified assessor with a master's degree in public health, testified about the April 2018 and July 2018 assessments of Resident. She used a standardized method of assessment (St. Louis University Mental Status test) and submitted both assessments as exhibits in the hearing. *See* R.R. at 17a-33a (April); 35a-52a (July). The most recent assessment (November 2018) revealed Resident's moderate dementia. *Id.* at 116a. Assessor did not specialize in assessing geriatric patients.

Assessor reviewed the results of the April and July 2018 assessments. The April assessment showed Resident could perform ADLs (grooming, dressing, bathing, etc.) unassisted. The July assessment showed Resident independently completed certain daily living skills, including bathing, toileting, dressing, telephone usage, transportation, and shopping. F.F. No. 16. It also confirmed Resident was capable of meal preparation, housework, and laundry were he not in a nursing facility. F.F. No. 17.

Following a hearing, the ALJ issued a decision on February 21, 2020, regarding whether the denial of MA/LTC benefits for Resident prior to November 2018 was appropriate based on his nursing care eligibility. *See* R.R. at 62a. The ALJ decision upheld the NFI determinations, noting that Resident was able to complete most of his activities of daily living independently, and he was therefore medically ineligible at all relevant times prior to November 6, 2018. The ALJ evaluated the payment conditions for MA, which requires a medical evaluation under 55 Pa. Code §1181.53(b). The BHA affirmed the ALJ's decision by final administrative order dated February 25, 2020. R.R. at 63a. Though Petitioner sought reconsideration in March, the Secretary of Human Services did not act on it timely.

Petitioner filed a petition for review of the merits order to this Court. After briefing, the matter is ready for disposition.

## II. Discussion

On appeal,[3] Resident challenges the date for approval of MA/LTC reimbursement, arguing the NFI determinations were erroneous such that his eligibility date should have been earlier. Primarily, Petitioner argues the BHA erred in not crediting Medical Director's testimony more than Assessor's testimony

---

[3] Our review of a decision by the BHA is limited to determining whether the adjudication is supported by substantial evidence, whether the decision is in accordance with the applicable law, or whether constitutional rights are violated. *See Support Ctr. for Child Advocs. v. Dep't of Hum. Servs.*, 189 A.3d 497 (Pa. Cmwlth. 2018).

4

regarding Resident's cognition and need for long-term nursing care in April 2018 instead of November 2018. Petitioner complains that the ALJ did not make specific credibility determinations or adequately explain her evaluation of Medical Director's testimony, and so did not fully perform her fact-finding function.

DHS counters that the BHA's decision is supported by substantial evidence, including Medical Director's testimony, which corroborates Resident's independent functioning. DHS also notes that Medical Director's testimony was not supported by test results. In addition, DHS emphasizes that weighing the evidence is the factfinder's role, not that of this Court.

### A. Nursing Care/LTC Eligibility

DHS, through the CAO, assesses a resident's medical care needs as part of an eligibility determination for MA benefits. *See generally* 55 Pa. Code, Chapter 1181 (Nursing Facility Care). Specifically, Section 1181.53, entitled "Payment conditions related to the recipient's initial need for care," requires a medical evaluation prior to authorizing payment of MA/LTC benefits as follows:

> (b) Medical evaluation. The medical evaluation shall consist of the following:
>
> (1) Before admission to a facility for skilled nursing care or <u>before authorization of payment, the attending physician shall make a medical evaluation of the applicant's or recipient's need for skilled nursing care</u>.
>
> (2) Before the latter of the admission of an applicant or recipient to a skilled nursing facility or [DHS's] authorization of payment for skilled nursing care, <u>an applicant or recipient shall be determined to be medically eligible for skilled nursing care</u> in accordance with the criteria specified in Appendix E (relating to skilled nursing care).[4]

---

[4] The definition of "nursing facility services" in the Act states in pertinent part:

**(Footnote continued on next page…)**

Skilled Nursing Care Assessment forms which are designed to enable [DHS] to determine whether the criteria specified in Appendix E are met by a recipient, will be supplied by [DHS]. The form shall be completed by a physician.

****

(5) The evaluations required in this subsection shall be recorded on the patient's medical record and on forms issued by [DHS] and forwarded to [DHS] for review and assessment. [DHS's] Review Team will evaluate the need for admission and authorize payment for the appropriate level of care.

(6) [DHS] will send a written notice of the authorization or denial of payment to the nursing facility and the patient.

(7) The notice will indicate the effective date of coverage and the amount of money the patient has available to contribute toward the interim per diem rate. Obtaining the patient's share of the interim per diem rate is the responsibility of the nursing facility.

55 Pa. Code §1181.53(b) (emphasis added). A resident's eligibility for MA benefits is determined based on the assessment of the type of care the resident needs.

This Court recognizes that: "Eligibility determinations are made on a case by case basis, based on the following criteria: age of the patient, overall medical condition of the patient, diagnosis and presenting signs and symptoms, length of hospital stay, medications, and services and treatment needs." *Fifty Residents of Park Pleasant Nursing Home v. Dep't of Pub. Welfare*, 503 A.2d 1057, 1058-59 (Pa. Cmwlth. 1986). Thus, we acknowledged that DHS considers a "patient's overall condition when making level of care recommendations." *Id.* at 1059.

---

[T]he term "nursing facility services" means services which are or were required to be given an individual who needs or needed on a daily basis nursing care (provided directly by or requiring the supervision of nursing personnel) . . . which as a practical matter can only be provided in a nursing facility on an inpatient basis.

42 U.S.C. §1396d(f).

6

The ALJ, on BHA's behalf, serves as the factfinder regarding eligibility determinations. *See Gardens Nursing Home, Inc. v. Dep't of Health*, 382 A.2d 1273 (Pa. Cmwlth. 1978) (*en banc*). As factfinder, the ALJ is permitted to make her own credibility determinations and weigh the evidence submitted, and resolve any conflicting evidence. *See Palmer v. Dep't of Pub. Welfare*, 291 A.2d 313, 317 (Pa. Cmwlth. 1972) (*en banc*).

Our discussion of the process and appellate review of conflicting medical opinions in *Goodman v. Department of Public Welfare*, 695 A.2d 945 (Pa. Cmwlth. 1997), is instructive. There, the county evaluated the resident's level of care and "concluded that [the resident] did not require intermediate care, which entailed the presence of 24-hour nursing staff, but that she could function just as well in a personal care home where [she] would have supervision but not a 24-hour nursing presence." *Id*. at 946. However, unlike the instant case, the hearing officer in *Goodman* did not make *any* findings regarding the assessments or suggest reasons for upholding the benefits denial. As a result, we vacated the decision and remanded the matter for the hearing officer to make findings regarding the evidence presented, and the reason for relying on one medical expert over another.

In contrast to *Goodman*, the ALJ's decision here contains 24 findings of fact and summarizes the witnesses' testimony. *See* R.R. at 75a-84a. She made specific findings regarding each of Resident's level of care assessments. *See* F.F. Nos. 5-10 (for April assessment), 15-18 (for July assessment). She found the assessments in both April and July 2018 showed Resident was able to perform ADLs and independent living skills, including the ability to travel with family on the weekends. Significantly, with regard to Medical Director's testimony, in the findings portion of the adjudication, the ALJ found: "Under questioning from the

7

ALJ, [Medical Director] testified that he performed a 'mini mental status' exam of [Resident]; however, this was not a standardized test. [Medical Director] indicated that [Resident's] dementia had been documented as mild or moderate and not beyond moderate. [Medical Director] agreed that [Resident] was able to complete his ADLs and IADLs independently." ALJ Adj. at 4 (unpaginated). The ALJ's questions to both Assessor and Medical Director focused on the testing tool used. *See* R.R. at 123a-25a (Medical Director).

Also, this Court has declined to adopt the "treating physician rule" employed in social security disability cases that gives greater weight to a treating physician (like Medical Director) than to another medical expert based on the doctor-patient relationship. *Goodman*, 695 A.2d at 949. Thus, pursuant to our case law, the Medical Director's testimony was not entitled to greater weight based on his status as Resident's treating physician.[5] *Id.*

Because the ALJ discussed the testimony and made findings on same, the ALJ performed her role in assessing the eligibility determination of Resident. Accordingly, the BHA did not err in adopting the ALJ's adjudication.

### B. NFI Determination of Resident

There is no dispute that Resident qualifies for MA/LTC benefits as of the date of the third care assessment in November 2018. Assessor noted a change in Resident's cognition, indicating mental impairment in memory and in judgment that warranted the higher level of care offered by a nursing facility. However, Petitioner challenges the basis for the ALJ's decision to uphold the earlier NFI determinations, asserting that the ALJ: (1) did not adequately explain her credibility determinations;

---

[5] Though Medical Director identified himself as Resident's "treating physician" during the hearing, Reproduced Record at 78a, the April and July 2018 assessments identify another doctor as Resident's primary physician.

and (2) erred in discounting Medical Director's opinion regarding Resident's condition when he had regular, direct interaction with Resident and was his treating physician.

Primarily, Petitioner assigns error in that the ALJ did not fully explain her decision to credit Assessor's testimony more than that of Medical Director who saw Resident regularly and treated his medical conditions in monthly appointments. However, an ALJ reviewing a level of care determination is not required to make specific credibility determinations. *See C.R. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 2067 C.D. 2011, filed May 15, 2012), 2012 WL 8700063 (unreported).[6] *Cf. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003) (requiring adequate explanation of credibility determination in workers' compensation context).

We discern no error by the ALJ in crediting the testimony of Assessor over that of Medical Director on this record. The ALJ noted discrepancies in Medical Director's testimony exposed during cross-examination supporting Resident's ability to function independently and perform ADLs without aid. Moreover, the record contains additional testimony by Medical Director that Resident can perform many ADLs and, at the time of the assessments at issue, could live independently, provided there was 24-hour supervision. *See* R.R. at 122a, 128a ("For the most part[,] that's my assessment is yes, he can do ADL's [sic].").

Here, the ALJ considered the April and July 2018 assessments submitted and Assessor's testimony regarding her observations of Resident when she deemed him NFI. She found that Resident did not require the level of nursing facility care he was receiving at Facility, and could have functioned at a lower level of care (*i.e.*, personal care home), which is reimbursable at a different rate. A

---

[6] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

personal care home provides 24-hour supervision without monitoring medical condition/skilled nursing care, such that services do not qualify as nursing care reimbursable at the LTC rate.

Because the ALJ had review and assessment forms for Resident, and Assessor testified regarding her observations of Resident during the relevant timeframe, there was substantial evidence to support the findings of fact accepting Assessor's NFI determinations. Assessor's testimony was credited by the ALJ. Since the findings were supported by substantial evidence, the BHA did not err in upholding the NFI determination. Therefore, there is no reason to disturb the MA/LTC benefits determination for Resident's care at Facility using the November 2018 eligibility date.

### III. Conclusion

For the foregoing reasons, this Court affirms the order of DHS.

_____
J. ANDREW CROMPTON, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald Paul, by and through : 
Julia Ribaudo Senior Center, : 
                 Petitioner : 
                        :       No. 303 C.D. 2020 
              v. : 
                        : 
Department of Human Services, : 
                 Respondent : 

## **O R D E R**

      **AND NOW**, this 11th day of January 2021, the order of the Department of Human Services is AFFIRMED.

 

                                   _____
                                   J. ANDREW CROMPTON, Judge